N. G. PENNINGTON, Appellant, v. J. M. ACKER and THOMAS J. BURNES, Appellees.

1. HUSBAND AND WIFE.—Any transaction, by which the title of the separate property of the wife becomes vested in the husband, is regarded with scrutiny and jealousy by the court; and it is incumbent on the husband to show that it was fair and honest, and such as in equity and good conscience, the wife ought to have acceded to.

2. HUSBAND: TRUSTEE FOR WIFE.—The husband is regarded as trustee for the wife, whenever a disposition of her separate property is attempted to be made for his benefit; and the rules applicable to ordinary trustees, acquiring an interest in the trust estate, will be enforced in such cases with the greatest rigor.

3. SAME.—If the husband and wife convey the wife's property to a third person, by deed of bargain and sale, reciting a specific valuable consideration, and such third party then immediately convey to the husband, it will not be competent for the husband to sustain the good faith of the transaction by proving another and different consideration,—the one mentioned in the deed being shown not to have been received.

4. WIFE: RIGHT TO SUE TO PROTECT TITLE.—The wife may maintain a bill to cancel a deed by which her title to property, secured to her under the act of 1839, has been fraudulently divested, although she has never been disturbed in her possession.

APPEAL from the District Chancery Court at Fulton. Hon. Henry Dickinson, vice chancellor.

The facts sufficiently appear in the opinion of the court.

*James Phelan,* for appellants,

Filed an elaborate written argument, reviewing the facts of the case, and the law.    He contended for the following propositions:—

1. It is incompetent for the husband to show any other consideration than the one mentioned in the deed to Acker.    2 Lomax, Dig. 193, and authorities there cited.

2. That the wife has no authority in law, to *give* her separate estate to the husband.    That whilst she had such right, under the law of England, it resulted from another rule recognized there, " that the wife, as to her separate estate, was a *feme sole.*"    That this rule has not been adopted in this state, and consequently that which necessarily resulted from it is not adopted.    See Clancy on Rights, 262; 4 S. & M. 193.

3. That if such right be conceded to the wife, the courts require the strictest good faith on the part of the husband; and that the circumstances of this case show, that the transaction was fraudulent, as to the husband.

4. That the act of 1839 was made for the benefit and protection of married women; that it was an enabling statute, and conferred all the power of disposition of the property which the wife has : and that she is not authorized by this act to give, but only to sell her separate estate.

*J. M. Acker*, for defendant, Burnes, filed an elaborate written argument, on the facts and law, and made the following points:—

1. That Mrs. Burnes had a right under our statute, to convey her separate estate, as she had done.    *Sessions* v. *Bacon*, 1 Cushm. 172.

2. At common law, she could act as a *feme sole*, as to her separate property; could sell or give the same to her husband.    Clancy on Rights, 347, 348, 349, 350, 351.    Reeves, Domestic Relations, 164, 165, 166.    She may deal with her husband, in regard to her separate property, 9 S. & M. 144; but she is limited to the mode pointed out in the instrument.    Ib. 435.    She may sell or mortgage her property, to pay her husband's debts.    2 Kent, 165, 167; 3 Johns. C. R. 129; 4 Con. R. 256, or may make a settlement of it on him.    1 Vesey, 189.    She may give to the husband, if such gift is not the result of flattery, or improper treatment.    5 Barbour, 226.

3. This court has decided that the acts of 1839 and 1846 were enabling statutes; that they did not abridge the rights of married women, but extended them. All the rights she had at common law, are therefore, superadded to those conferred by statute. At common law, her right to sell or give to the husband is clear, and now exists, as it was not taken away by the statutes of 1839 or 1846.

FISHER, J., delivered the opinion of the court.

This was a bill filed by the wife against her husband, in the Vice Chancery Court, holden at Fulton, for the purpose of cancelling certain deeds, whereby her slaves, which she possessed under the act of 1839, were conveyed to the husband.

The facts are as follows: Burnes and wife, conveyed the slaves of the latter to J. M. Acker, with the understanding that he should convey them to the husband, Burnes. Acker having made the conveyance according to said understanding, the wife filed this bill, to have said conveyance cancelled, and the bill revested in her.

The bill charges, that the complainant was induced to believe, that the slaves were sold to Acker, for a full and fair consideration; and thus believing, she gave her consent to the conveyance. The answer, on the contrary, sets up, that the husband having paid certain debts of the wife, she was fully informed as to the object of the transaction, and that it was to reimburse the defendant.

Under the state of facts presented by the record, we do not deem it necessary to decide, whether the deed is void *per se*, or whether the transaction may, under special circumstances, be sustained. The husband, in making the sale, was the trustee of the wife, if not in a strict technical sense, at least so far as good faith was concerned; and the same rules which apply to transactions between trustee and *cestui que trust*, would be applied even with greater rigor to this class of cases, because the influence which the husband is always presumed to exert over his wife, is in the nature of things, greater than can be exerted in ordinary cases of trust by the trustee, over the *cestui que trust*. The husband having by the transaction acquired without legal consideration, the wife's title to the slaves, the question is not, whether she has

shown the transaction to have been fraudulent on his part, but whether he has shown it to have been fair, and such as in conscience ought to bind her. She makes out her case, when she shows that he has acquired the title to her property; and to sustain the transaction on his part, he must show by satisfactory proof, that although the wife was under his influence, yet such influence was employed only to induce her to make such a disposition of her property as she ought in equity and good conscience to have made.

Again, the deed of conveyance, in the absence of proof to the contrary, must be taken to contain the terms of the contract, as assented to by the wife; and it recites that it was made upon the consideration of three thousand dollars in cash paid by Acker. The husband, to sustain his purchase, must show that the consideration moving the wife to make the conveyance, if not the same, was nevertheless the same in substance as that recited in the deed. When tested by this rule, the proof utterly fails.

Another point made by counsel is, that as the husband is entitled to the *usufruct* of the property, no action can be sustained by the wife, until this interest of the husband shall have expired. We disagree with counsel in this position. The fraud was committed, not upon the wife's possession, but upon her title. Her ultimate benefit in the slaves must depend upon the fact whether she survives her husband, and she is only seeking to protect her title, with a view to this ultimate benefit, if she should be the survivor. If these conveyances should stand, she must, at a future day, have the difficulty with the husband's representatives, instead of with him at the present time. It is his fraud of which she complains, and which has placed her title to her slaves in him, and which must give the slaves to his representatives, instead of their remaining to her, if she should be the survivor. But it is not our intention to elaborate this point. We are clearly of opinion, that the bill can be maintained to cancel the deed; thus leaving the slaves in the same condition, and the rights of the parties the same as they were prior to the conveyances.

Decree reversed; deed to Acker, and deed from him to the husband cancelled, and the title to the slaves revested in the wife, according to the provisions of the act of 1839.