MATHY *v.* MATHY.

Opinion delivered November 2, 1908.

1. DIVORCE—CONDONATION.—Resumption of the marriage relation amounts to a condonation of past causes of divorce. (Page 59.)

2. HUSBAND AND WIFE—EFFECT OF CONVEYANCES BETWEEN.—A deed from a wife to her husband directly will convey the equitable, but not the legal, title. (Page 60.)

3. SAME—BURDEN OF PROOF.—The presumption in equity is against the validity of a conveyance of land from a wife to her husband, and the burden is on him to show that it was obtained fairly and without the exercise of undue influence, and that it ought in good conscience to bind her. (Page 61.)

4. DIVORCE—RESTORATION OF PROPERTY—CHARGES AND CREDITS.—Where, on granting a divorce, the husband is required to restore property which the wife had deeded to him, he will be charged with the net amounts of rents received by him therefrom, and will be credited with all amounts expended by him in clearing the title and removing incumbrances from the property, insurance, taxes, and fixed charges against it paid by him and all permanent improvements made by him, with legal interest from date of payment, and to have a lien on the property for any excess found to be due him. (Page 62.)

Appeal from Garland Chancery Court; *Alphonso Curl,* Chancellor; reversed.

*C. V. Teague,* for appellant.

1. If the evidence as to appellant's alleged trespasses against the marriage vow was all true, it was condoned by the appellee's voluntarily cohabitating with him, after she knew of the offenses, when she could find no other to please her better; and there is no proof of subsequent guilt on his part. 87 Ark. 175.

2. Five years having elapsed after she discovered the offenses before she brought suit, she is barred.

3. It was error to decree a trust in favor of the appellee in the Magnolia Hotel property. The effect of her deed to appellant was to leave the legal title in her, and vest the equitable title in appellant. 60 Ark. 70; 62 Ark. 26. There is no proof to warrant a finding that appellant used undue influence or coercion to obtain the deed, nor even that he solicited her to make it. No claim that he used persuasion, duress, or undue influence to induce her to make the deed. It was simply a case of business

precaution, justified by her conduct, to decline to invest in the property, and pay out his money, without receiving the title. There is no equity in holding that he shall lose all that he has paid, and that he holds the property only in trust for her. A deed from a wife to her husband is not void, both at law and in equity. 75 Ark. 127; 73 Ark. 310; 40 Ark. 62. In order to establish an implied, resulting or constructive trust, the evidence must be full, clear and satisfactory. If it is doubtful or capable of reasonable explanation upon other theories than the existence of such a trust, the party setting it up will have failed. 64 Ark. 165; 48 Ark. 169; 44 Ark. 365; 61 S. E. 200; 35 N. E. 214; 36 N. E. 617; 41 N. E. 156; 2 Pomeroy's Eq. Jur. (2 Ed.), § 1040. In the absence of fraud, trusts are never presumed as intended by the parties. 26 Ark. 240, 250. See, also, 27 Ark. 77; 94 Pac. 1047; 9 Ark. 518, 526; 68 N. E. 545; 40 Ark. 62; 50 Ark. 42; 71 Ark. 373; 113 Mass. 157; 18 B. Mon. (Ky.) 866. While at common law neither husband nor wife could convey to the other, the rule is different in equity, and the wife may contract with the husband on fair terms. 41 Ark. 177; 42 Ark. 503; 15 Ark. 519; 23 Ark. 507; 101 U. S. 225; 111 U. S. 117; 21 Neb. 671; 86 Ala. 357; 132 Ill. 445; 88 Am. Dec. 49.

*S. W. Leslie, M. S. Cobb* and *Wood & Henderson,* for appellee.

1. Argue from the evidence that the chancellor was right in refusing a divorce to either party.

2. The chancellor was right in finding that the appellant advanced the money to pay off the indebtedness on the hotel property, and that this advancement was intended as a gift to the wife; that he took the deed to the property in his own name, to the end that, in the event of appellee's death prior to his own, the property would be his; also in order to prevent appellee from disposing of the property without his consent, and that he would protect appellee by his will. These things being true, appellant held the property in trust for his wife, and his payments thereon were gifts. 36 Ark. 586; 64 Ark. 155; 118 N. Y. 684; 52 N. J. L. 7; 69 Wis. 564; 111 Ind. 433; 1 Parsons, Notes & Bills, 149; 121 Ill. 388. Consideration is essential to a contract. Neither the motive nor the expectation of result that induces one to enter into a contract constitutes its consideration. 14 Wall. 570.

There is no equitable consideration here. 15 Cent. Law Jour. 386. And there could be no consideration of love and affection in this case. The presumptions are against the validity of this entire transaction. The burden is upon appellant to show that it was fair, free and voluntary on appellee's part. 21 Cyc. 1293; 29 Am. Rep. 197; 20 Am. Dec. 410. Unless he shows some consideration therefor, the burden is on appellant to show that appellee's deed to him was intended as a gift of the property, and not as a trust. 77 Pac. 264; 21 Cyc. 1300-1. A trust *ex maleficio* arises whenever a person acquires the legal title to property by means of an intentional, false or fraudulent verbal promise to hold the same for a certain specific purpose. 33 Am. St. Rep. 229; Pomeroy's Eq. Jur. 1053; 3 Ballard, Real Prop. 661; 102 N. W. 268. Resulting trusts are especially excepted from the operation of the statute of frauds. Martin's Chancery (Ark.) 125. And whether or not there was a trust depends on the intention of the parties at the time of the transaction. *Id.* 126. To enforce a wife's contract with her husband, it must be equitable and fairly made, and for a proper consideration. 9 Am. Rep. 670; 104 Ill. 122; 80 Pa. St. 298.

HART, J. Della J. Mathy instituted an action for divorce against Joseph Mathy in the chancery court of Garland County on the 19th day of April, 1906, and the case is here on appeal.

The complaint alleges a marriage on May 3, 1885, in Chicago, Illinois, a residence in Arkansas for the statutory period required for divorce, and for cause of divorce assigns cruel treatment and personal indignities. She prays for alimony, attorney's fees, and for general relief.

On May 23, 1906, Joseph Mathy answered, admitting the marriage and residence in the State of Arkansas, but denies all the other material allegations of the complaint. On May 30, 1906, he filed his cross-complaint, alleging that appellee had been guilty of adultery with divers persons named in his cross-complaint.

On June 9, 1906, appellee answered the cross-complaint. She denied adultery on her part, and charged appellant with adultery with various women named by her in her amended bill. Subsequently, several amendments were made to the pleadings, which consisted in additional charges of adultery by each and a denial of the charges by the other.

The chancellor found both parties equally at fault, and therefore rendered a decree dismissing both the complaint and the cross-complaint for want of equity.

A large amount of testimony was taken on each side. On account of the vulgar details, we will refrain from making an abstract of the testimony. Besides, it would serve no useful purpose.

A careful examination of the evidence leads us to conclude that, whatever may have been the sins of each against the marriage vows, about the beginning of the year 1905, they confessed their past offenses to each other, and each forgave the other. A reconciliation was had, and the marriage relation was resumed. This amounted to a condonation of past causes of divorce. *Womack* v. *Womack*, 73 Ark. 281.

The evidence clearly establishes the subsequent adultery of appellee. On the other hand, we do not think that the testimony shows that appellant has been guilty of adultery since the date at which all past offenses of each party was condoned by the other, nor do we think it sustains the charge of cruel treatment against him during that time. Therefore the chancellor erred in dismissing the cross-complaint of appellant.

On the day that the decree was rendered, the chancellor permitted appellee to amend her complaint so as to conform to the proof, and to ask that appellant be decreed to hold certain property situated in Hot Springs, Arkansas, called the Magnolia Hotel, in trust for her, and that the title to the same be invested in her.

The facts concerning this property as disclosed by the record are as follows: After appellee became enamoured of one Judge Irwin and went to live with him, she claims that she and her mother, in partnership, bought the property in Hot Springs, Arkansas, called the Magnolia Hotel; that the purchase price was $3,300, and that her mother and herself contributed $1,200 or $1,400 towards the payment of it. In any event, the undisputed facts show that the property was purchased for $3,300, and the title was taken in Judge Irwin's name. After the death of the mother of appellee, and after Judge Irwin had abandoned appellee, he conveyed the property to her by deed. The consideration was $1,100, for which she gave him her note, and also an

agreement on her part to pay the balance of the purchase money, which was the difference between the $1,100 and $3,300, the original purchase price. After she returned to her husband in 1902, she conveyed the property to him for a nominal consideration. He paid the note which she had given to Judge Irwin and also the note for the balance of the purchase money, amounting in the aggregate to something over $3,300.

Appellee told appellant the exact condition of affairs; said that she was not able to pay off the incumbrance, and asked him to do so. Appellant agreed to do this if appellee would deed him the property, but not otherwise. Appellee wanted the deed in the name of both of them. Appellant said that he would not invest in the property unless it was deeded absolutely to him, and that he wanted it this way to keep her people from getting it if she should die. She told him that she would make a will in his favor to prevent that. He replied that the will was not sufficient. She finally deeded it to him because he did not want her people to get it. This is the version of the transaction as testified to by appellee.

Appellant claims that appellee confessed to him that Irwin had kept the money of herself and mother, and took the title in his own name in violation of his agreement with them. He says that he paid off the incumbrances on the property to the extent of over $3,300, and denies that he told her that he must have the title in his own name because he did not want it to go to her people in case of her death. He found that the property would sell for the amount it would cost to clear off the indebtedness, and then took a deed direct from his wife to himself. Subsequently he paid off the indebtedness.

"A deed of land by husband directly to his wife, in the absence of fraud, will convey to her the equitable estate, while he holds the legal title as her trustee." *Ogden* v. *Ogden,* 60 Ark. 70. In like manner a deed from the wife to the husband does not convey legal, but only the equitable, title. The present case stands with the legal title in the wife and the equitable title in the husband. The property is in the possession of the husband. Appellee seeks the aid of a court of equity to have the equitable title revested in her, and appellant asks that the legal title be vested in him. At the time of the conveyance, the parties, al-

though formerly estranged, had become reconciled to each other, and the presumption was that their marriage relation would only be dissolved by death. The changed conditions now are that the property has increased in value, and the marriage relation has been dissolved by an absolute divorce.

Equity will scrutinize more closely a conveyance from the wife to the husband than an ordinary conveyance. On account of the confidential relation and the supposedly greater influence of the husband, the wife's conveyance may be attended with a presumption against its validity. 21 Cyc. 1293.

"In any transaction by which the husband acquires title to his wife's separate property, the burden is on him to show it to be fair, and without any exercise of undue influence, and such as in good conscience ought to bind her." *Pennington* v. *Acker,* 30 Miss. 161; *Farmer* v. *Farmer,* 39 N. J. Eq. 211.

The chancellor found in favor of the appellee, and, when tested by the equitable principles above announced, we cannot say his finding was against the weight of the evidence. But we think the case calls for the application of that maxim, which has been regarded as the foundation of all equity, "he who seeks equity must do equity." It would be inequitable to restore the property to the appellee, and not require her to return to appellant the amounts he has expended on the property. She should be required to repay him the amount expended by him in removing incumbrances from the property, taxes paid by him, and permanent improvements, if any, made by him, with the legal rate of interest from date of payment, and these amounts should be credited by the amount of rents received by him. A lien on the property should be declared to secure the payment of the balance.

For the reasons given, the decree must be reversed, and the cause remanded with directions to enter a decree in accordance with this opinion.

The chancellor may, if he deem it necessary, give leave to either party to introduce further evidence in regard to the amounts expended by appellant and the rents received by him on the Magnolia Hotel property.

ON REHEARING.

Opinion delivered November 30, 1908.

HART, J.    The original opinion in this case will be so amended as to allow appellant all amounts expended by him in clearing the title and removing incumbrances from the property, insurance, taxes, and fixed charges against it paid by him, and all permanent improvements, if any, made by him, with the legal rate of interest from date of payment if the same be shown in an equitable accounting to be just charges.    These amounts should be credited by the net amount of rents received by him.

In all other respects the motion for rehearing is denied.