O'Quin *v.* O'Quin.

4-9169                                    230 S. W. 2d 16

Opinion delivered May 15, 1950.

322

*L. M. Alexander* and *Gerland P. Patten,* for appellant.

*Sam Robinson* and *A. F. House,* for appellee.

HOLT, J. The parties to this litigation were married November 14, 1941. They were both employed at the Veterans Hospital where appellant (Mrs. O'Quin) had worked for approximately twenty years and is now so employed. Immediately following their marriage, they established a joint bank account in a North Little Rock Bank in which both deposited all earnings. Appellee (Mr. O'Quin) had a son by previous marriage, but has no child by appellant. Both were middle-aged.

At the time of their marriage, Mrs. O'Quin owned four lots in North Little Rock on one of which was her dwelling. She also possessed cash and household furniture, all totaling approximately $2,200. Mr. O'Quin owned property of the approximate value of $1,500.

By thrift and regular employment, from their joint efforts, they improved the home property of Mrs. O'Quin and acquired and improved a number of other pieces of real estate, also Government bonds, a profitable plumbing shop built on one of the above lots which Mrs. O'Quin brought to the marriage, an automobile and other property. All of the above property, real and personal, immediately following the marriage and as later acquired, was put in the names of Mr. and Mrs. O'Quin as tenants by the entirety.

This marriage progressed harmoniously until August 11, 1948, when differences arose which resulted in Mr. O'Quin's filing suit for divorce and a decree in his favor on September 1, 1948. On August 28, 1948 (about three days before this decree), an alleged property settlement had been made by these parties and deeds executed.

Thereafter, on September 14, 1948, the parties having become reconciled, at their joint request, the court set aside and annulled the above decree of divorce of September 1, 1948, but made no order relative to the previous property settlement.

The present suit was filed by Mrs. O'Quin December 23, 1948, in which she asked for divorce and that the deeds which she made to Mr. O'Quin wherein she conveyed certain real property, presently referred to, be set aside for fraud, undue influence in its procurement and lack of consideration, and that she was entitled to one-half of all their property, real and personal.

The trial court, after an extensive and patient hearing, denied appellant's prayer for divorce, but confirmed in Mrs. O'Quin title to the real property received by her in the alleged property settlement August 28, 1948, $1,600 in cash, a Plymouth automobile valued at $2,300 and her right to $2,500 in Postal Savings Certificates. By the decree, Mr. O'Quin was given real property worth more than $30,000, the plumbing shop, trucks and equipment. of the approximate value of $5,000, $2,500 in Postal Savings Certificates, and $12,299.85, which constituted their joint bank account.

Much testimony was presented. Charges, counter-charges, and accusations, not sustained by the proof, were made. We shall not extend this opinion by detailing the testimony. It suffices to say that, on the divorce issue, we hold that both parties appear to be about equally at fault; that, in the circumstances, all accusations, differences and any misconduct were condoned and forgiven by each following the resumption of their marital relations, as indicated, and that the preponderance of the testimony is not against the Chancellor's finding that appellant was not entitled to a divorce.

On the issue of the property settlement, we hold that the court erred in denying Mrs. O'Quin's contention that all of the property involved here was acquired and owned by the parties as tenants by the entirety and that she was therefore entitled to a one-half interest in said property.

We think the preponderance of the evidence shows that following the first rift in their marriage August 11, above, the parties endeavored to adjust their differences and that appellee by what, in effect, amounted to fraud, overreaching, and deception, induced his wife, on the promise to save the marriage, to deed to him on August 28, 1948, lots 1, 2, 11 and 12 Holead's Addition to Levy, now in the City of North Little Rock, Pulaski County, Arkansas, and Lot 5, Block 60, North Argenta, now in the City of North Little Rock. The four lots above described in Holead's Addition were owned by Mrs. O'Quin at the time of their marriage.

At the same time a deed was executed to Mrs. O'Quin to Lots 11 and 12, Block 2, Machin's Addition to North Little Rock and Lot 2, Block 4, Vestal's Addition to North Little Rock.

These deeds appear to have been executed on a Saturday and on the following Monday, August 30, Mr. O'Quin sued for divorce and secured an uncontested decree which was later set aside, as above indicated.

It is a well settled rule applicable here that: "Equity will scrutinize more closely a conveyance from the wife to the husband than an ordinary conveyance. On account of the confidential relation and the supposedly greater influence of the husband, the wife's conveyance may be attended with a presumption against its validity. 21 Cyc. 1293.

" 'In any transaction by which the husband acquires title to his wife's separate property, the burden is on him to show it to be fair and without any exercise of undue influence, and such as in good conscience ought to bind her.' " (*Mathy* v. *Mathy*, 88 Ark. 56, 113 S. W. 1012.)

We think it clear that following the setting aside of the divorce decree, September 14, 1948, there was an

honest effort and intention by both parties to resume their former status in every respect, including their joint property interests which, in effect, cancelled their property settlement of August 28, 1948.

It is significant that Mrs. O'Quin on the resumption of their marital relations, delivered to Mr. O'Quin the Postal Savings Certificates along with deeds and other properties, the $1,600 assigned to her by her husband was deposited in a new joint bank account and all rents from their properties went into this account, along with Mrs. O'Quin's salary checks. There appears to have been no effort by them during this period to separate their property interests.

The rule is well settled that: ''Where the parties to a valid separation agreement afterward come together, and live together as husband and wife, where their conduct toward each other is such that no other reasonable conclusion can be indulged than that they had set aside or abrogated their agreement of separation, then such agreement should be held as annulled by the parties to it, and their marital rights determined accordingly.'' (*Carter* v. *Younger,* 112 Ark. 483, 166 S. W. 547), and in *Sherman* v. *Sherman,* 159 Ark. 364, 252 S. W. 27, where a separate agreement involving property was involved, after reaffirming the above language in the *Carter* v. *Younger* case, we said: ''Tested by this rule, we think that the facts and circumstances of this case warranted the chancery court in finding that the marital relations between J. W. Sherman and his wife never ceased, and that there was mutual forgiveness of the past misconduct on the part of each. . . .

''The preponderance of the evidence indicates that it was not only their intention to end the contract, in so far as it required them to live apart, but also to annul it as to the settlement of their property rights. . . .''

We have not overlooked appellee's ''Motion to Dismiss,'' which we hold to be without merit.

Accordingly, the decree denying the divorce is affirmed, but, as to the property rights, is reversed and the

cause is remanded with directions to set aside any and all instruments by which the parties have destroyed the tenancy by the entirety existing between them, and to enter a decree that the parties are tenants by the entirety as to all real and personal property owned by them before the instruments of August 28, 1948. If, since August 28, 1948, either party has made unfair or prejudicial disposition of any of the personal property to the disadvantage of the other, then the Chancery Court will, on proper petition of the aggrieved party, require restoration of such personal property to the entirety estate. The cost of all proceedings is adjudged against the appellee.

Judge GEORGE ROSE SMITH not participating.