## Dorothy HAIR *v.* J. C. HAIR

CA 80-247                                           607 S.W. 2d 72

Court of Appeals of Arkansas
Opinion delivered October 29, 1980
Rehearing denied December 3, 1980

*Howell & Price, P.A.*, for appellant.

*Macom, Morehead, Green & Henry*, for appellee.

GEORGE HOWARD, JR., Judge. On April 4, 1977, appellant and appellee, husband and wife, entered into a "Separation and Property Settlement Agreement" which provided in essence that:

1. Appellant should receive title to the home with was owned by the parties as an estate by the entirety, along with the furniture, fixtures, appliances, silverware, china and utensils.

2. Appellee should receive title to a 1976 Ford truck and a camper.

3. Appellee agreed to be responsible for the college education of Rhonda, the parties' oldest daughter, age 18, and Denise, a daughter, age 15, provided they attended college within the State.

4. Appellee should maintain a joint bank account in order for appellant to maintain the current expenses; if, however, appellee should fail to deposit funds periodically in the joint account, appellee should pay appellant alimony at the rate of $500.00 per month.

While the introductory part of the agreement stated that matrimonial difficulties had arisen between the parties and as a consequence, "they are now living separate and apart from each other and intend to continue to live separate and apart for the rest of their natural lives", the parties, at the time the agreement was executed, lived under the same roof, but occupied different sleeping quarters; and even after the execution of the agreement, the parties continued to live under the same roof.

Appellee testified that after the agreement was executed, the parties' relationship improved and that the parties indulged in sex at least once or twice a week from April 4, 1977, until November, 1977.

On June 6, 1979, appellant filed a complaint for an absolute divorce and sought enforcement of the property settlement agreement. Appellee counterclaimed for divorce and requested the court to set aside the property agreement and cancel a quitclaim deed that was executed simultaneously with the agreement conveying his interest in the home place to appellant. The grounds asserted for divorce by both parties were general indignities.

The trial court refused to grant a divorce to either party, set aside the property settlement agreement, cancelled the quitclaim deed and terminated the alimony payments to appellant.

For reversal, the appellant argues:

1. The trial court erred in denying appellant an absolute divorce.

2. The trial court did not have jurisdiction to set aside the property settlement agreements, nor authority

to cancel the quitclaim deed.

The trial court, in denying an absolute divorce to either party, found that there was insufficient corroboration to establish general indignities asserted as a cause for divorce by the parties. Appellant called as her witnesses Mrs. Rosa Haller, mother of appellant, and Mrs. Lola Jacobs, a sister of the appellant, both of whom did not testify from what they had observed personally, while in the presence of the parties, but essentially from what they had been told by the appellant. Mrs. Jacobs testified that she never witnessed a family conversation between appellant and appellee; and that she seldom saw the parties socialize together in public; that when she visited in the home, on some occasions, it was apparent to her that the parties had had an argument, but the atmosphere was quiet and nobody was speaking to "anybody" and appellant appeared upset and her eyes appeared red.

Mrs. Haller testified that while she had practically daily contact with the parties, over the past five years, she could feel a "tenseness in the air"; that appellee would be sitting in the living room with a newspaper while appellant would be in the kitchen; that she never heard a normal conversation between the parties; and that she never witnessed a quarrel.

The appellee called as witness Donald K. Kaker and Mason Brown who testified essentially that when they visited in the home of the parties, they did not observe anything special or unusual; that the parties' relationship appeared friendly.

Appellant testified that appellee had ignored her for five years, proceeding the filing of the action, and during this period, there was no sexual relationship; and that appellee was responsible for the breakdown in the parties' sex life. On the other hand, appellee testified that appellant was responsible for the impasse that developed in the parties' relationship; and that their sexual relations did not improve until appellant received the quitclaim deed to the home.

Under the circumstances just enumerated, we are un-

able to say that the holding of the trial court in denying a divorce to appellant is clearly against the preponderance of the evidence.

It is settled that in a contested divorce action, the testimony of a party to suit must be corroborated before a decree of divorce may be granted. *Smith* v. *Smith*, 245 Ark. 668, 433 S.W. 2d 835 (1968). The declared purpose of the rule requiring corroboration is to prevent the ascertainment of divorces through collusion. Where, however, it is clear that there is no collusion the corroboration may be comparatively slight. *Anderson* v. *Anderson*, 234 Ark. 379, 352 S.W. 2d 369 (1961). Here, the attempted corroboration falls far short of even meeting the standards of "slight corroboration."

Moreover, lack of congeniality in a family relationship, without more, is insufficient to establish a cause for divorce on the grounds of indignities. The conduct complained of must show "settled hate and a manifestation of alienation and estrangement" and must have been conducted systematically and habitually over a period of time making one's condition in life intolerable. *Bell* v. *Bell*, 105 Ark. 194, 150 S.W. 1031 (1912); *Preas* v. *Preas*, 188 Ark. 854, 67 S.W. 2d 1013 (1934).

The real problem that confronts the Court in this appeal relates to the authority of the trial court to set aside the property settlement agreement and cancel the quitclaim deed executed by appellee.

Appellant argues that the separation and property settlement agreement is a valid executed and independent property settlement, and, consequently, the trial court was without jurisdiction to set aside the agreement. Moreover, argues appellant, the quitclaim deed having been executed pursuant to the terms of the property agreement, the trial court exceeded bounds of its authority in cancelling the deed.

The thrust of appellant's argument may be summarized: that before the property settlement agreement could be cancelled or set aside, it was imperative that the parties demonstrated an intent to abrogate the agreement; and that

from this record there is no basis for finding an abrogation because the parties expressly agreed, in the property settlement agreement, that the agreement "shall survive any court decree" and shall be "forever binding"; and that the parties, to a degree, complied with the agreement which is clearly evidenced by the execution of the quitclaim deed by appellee and the maintenance of the joint bank account affording funds to appellant for the payment of living expenses; and the maintenance of the home for the parties' minor child, Denise.

The trial court found that while the separation and property settlement agreement was valid at the time of the execution, the subsequent conduct of the parties — cohabitation from April 4, 1977, to November, 1977 — abrogated the agreement; and that the parties should be restored to their original positions.

It is well recognized that findings of fact of the trial judge will not be set aside by an appellate tribunal unless the findings are clearly against the preponderance of the evidence, giving due regard to the opportunity of the trial court to judge the credibility of ·the witnesses. *See:* Rule 52, Rules of Civil Procedure.

We are persuaded that the issue here is controlled by the ruling in *O'Quin* v. *O'Quin*, 217 Ark. 321, 230 S.W. 2d 16 (1950), where the Arkansas Supreme Court dealt with a similar issue:

> ". . . 'Where the parties to a valid separation agreement afterward come together, and live together as husband and wife, where their conduct toward each other is such that no other reasonable conclusion can be indulged than that they had set aside or abrogated their agreement of separation, then such agreement should be held as annulled by the parties to it, and their marital rights determined accordingly.' . . . [W]e think that the facts and circumstances of this case warranted the chancery court in finding that the marital relations between J. W. Sherman and his wife never ceased, and that there was a mutual forgiveness of the past misconduct on the part of each. . . .

" 'The preponderance of the evidence indicates that it was not only their intention to end the contract, in so far as it required them to live apart, but also to annul it as to the settlement of their property rights. . . .' "

After carefully reviewing the record, we cannot say that the findings of the chancellor are clearly against the preponderance of the evidence. It is undisputed that after the separation and property settlement agreement was executed, not only did the parties continue living under the same roof, but indulged in sexual relations for at least twice weekly from April 4, 1977, to sometime in November, 1977. It is also clear that the quitclaim deed executed by the appellee was executed pursuant to the separation and property settlement agreement. We deem it sufficient to state, relative to the remaining points asserted for reversal, that we find no error and, consequently, the decision of the trial court in affirmed.

Affirmed.

WRIGHT, C.J., and HAYS and PILKINTON, JJ., concur in part, dissent in part.

JAMES H. PILKINTON, Judge, dissenting in part, concurring in part. As pointed out in the majority opinion, the real problem that confronts the court in this appeal concerns the authority of the trial court, under the facts of the case, to set aside the property settlement and cancel the quitclaim deed executed by the appellees. The trial court found that while the property settlement agreement was valid at the time it was made, the subsequent conduct of the parties — engaging in acts of sexual intercouse — was sufficient to abrogate the agreement; and justified the court in restoring the parties to their original positions. I consider this finding of the trial judge to be clearly against the preponderance of the evidence.

I do not believe that this case is controlled by the ruling in O'Quin v. O'Quin, 217 Ark. 321, 230 S.W. 2d 16 (1950), as the facts are entirely different. In O'Quin the court determined that there had never been a bona fide separation, and the parties were not actually separated within the meaning of the law when the settlement of their property rights was

made. That is not the case here. In the litigation before us there was a real separation which occurred before the parties divided their property, and before the husband deeded his interest in the home to the wife. The conduct of the parties toward each other here was compatible with the separation agreement. They had agreed to separate, but to remain under the same roof and not seek a divorce until the youngest daughter graduated from high school. That is exactly what happened. Mrs. Hair did not file this suit until after the daughter had graduated. If *O'Quin* v. *O'Quin* does control, how can it be said on this record (as required by the ruling in *O'Quin*) that "no other reasonable conclusion can be indulged than they had set aside or abrogated their agreement of separation . . ."?

I can find no evidence in this record to show that the parties intended by their subsequent conduct to annul the property settlement, and I do not believe that the husband, under the facts of this case, was entitled to have the deed cancelled. While I agree that the court was correct in denying the divorce to either party for want of sufficient corroboration, I would reverse that part of the decree which set aside the property settlement and voided the deed. Even though the parties are not divorced, they are separated, and it is my view that the husband, under the circumstances shown by this record, is bound by the property settlement agreement and deed. In my opinion, the trial court's finding with reference to the property settlement and deed is clearly against the preponderance of the evidence. Rule 52, Arkansas Rules of Civil Procedure.

I am authorized to say that Wright, C.J., and Hays, J., join in this dissent.