Dorothy HAIR *v.* J. C. HAIR

80-287                                        613 S.W. 2d 376

Supreme Court of Arkansas
Opinion delivered March 2, 1981
[Rehearing denied April 20, 1981.]

*Howell & Price*, for petitioner.

*Macom, Moorhead, Green & Henry*, for respondent.

FRANK HOLT, Justice. Petitioner sued respondent for divorce and asked that a written property settlement between the parties be enforced by the court. Respondent counter-claimed for a divorce, asked that the agreement be annulled and that a conveyance by him of his interest in the family

home pursuant to this agreement be set aside. The chancellor denied both parties a divorce, set aside the agreement, and ordered respondent's quitclaim deed to be set aside. This decree was upheld by the Court of Appeals. *Hair* v. *Hair*, 270 Ark. 948, 607 S.W. 2d 72 (Ark. App. 1980). We granted certiorari. We affirm the denial of a divorce and reverse as to the cancellation of the property settlement and setting aside of the deed.

The parties, who had been married since 1952, entered into a "Separation and Property Settlement Agreement" on April 14, 1977. The parties were living in the same household and continued to do so after the agreement until the divorce action. The agreement provided that they were making an effort to maintain the home for the benefit of their 15 year old daughter until she finished high school; if petitioner sued for a divorce prior to that time the agreement would be null and void; it was the intention of the parties that all rights with respect to the property and financial matters be finally and conclusively fixed and determined by the agreement; the petitioner would receive the furniture, fixtures and appliances, among other things, and title to the home; a joint bank account would be maintained from which the petitioner would pay the living expenses and bills incurred; respondent would be responsible for the college education of their children, Rhonda and Denise, provided they attended an Arkansas supported college; if the respondent should discontinue the joint bank account or stop depositing money in the account as agreed, he would pay petitioner a stipulated alimony amount; and the agreement should not be merged in any decree for divorce but should survive the same and be forever binding and conclusive on the parties.

It was undisputed by the parties that they continued to live in the same household following their agreement until petitioner filed the present action for divorce on June 6, 1979, one month following their youngest daughter's high school graduation. Both parties testified that, at the time of the signing of the agreement, respondent wished to stay in the home until their youngest daughter graduated from high school. Here, the parties' testimony diverges. Petition-

er testified that she slept in her children's bedroom from the day the agreement was signed; the couple had not had sexual relations in five years before the agreement and had not lived together as man and wife since signing the agreement; sometimes they attended ball games together after the agreement was signed; however, they arrived in different cars, and they did not go to social functions together; she did not record the quitclaim deed to their home until April 4, 1979, because respondent is a disabled veteran and did not have to pay real estate taxes.

Respondent admitted signing the agreement. He testified they resumed sexual relations from the day the agreement was signed in April of 1977 until the following November; further, his wife had told him upon signing the agreement that she thought they could make a go of it and she would not need to file for divorce; she slept in another room because of his snoring; they attended certain social functions and other activities together. According to neighbors, there was no appearance of estrangement.

The trial judge found that the agreement was valid at the time of its execution. However, he found that subsequently the parties "cohabited as husband and wife" and the agreement should therefore be set aside and voided. In this he erred. It is true that if the parties to a separation agreement resume their marital relationship and their conduct is such that no other reasonable conclusion can be justified than that they intended to cancel their agreement, then it results in abrogation of the agreement. *O'Quinn* v. *O'Quinn*, 217 Ark. 321, 230 S.W. 2d 16 (1950). See *Simpson, Administrator* v. *Weatherman*, 216 Ark. 684, 227 S.W. 2d 148 (1950); *Sherman* v. *Sherman*, 159 Ark. 364, 252 S.W. 27 (1923); and *Carter* v. *Younger*, 112 Ark. 483, 166 S.W. 547 (1914). However, the fact that the two may have resumed a marital relationship, which is disputed here, does not cancel a mutual agreement. In *Arnold* v. *Arnold*, 261 Ark. 734, 553 S.W. 2d 251 (1977), we said:

> [W]hen there is a property settlement, it is generally held to be a final and binding contract between the parties which can only be voided by mutual agreement.

> Reconciliation alone does not terminate the settlement. Therefore the settlement survives the reconciliation unless the court can find an intention or an express agreement that it shall not survive.

Further, the agreement being undisputed, the burden of proof was upon respondent to show that the agreement had been abrogated. *Carter* v. *Younger, supra.* Here it cannot be said that respondent has sustained, by a clear preponderance of the evidence, his burden of showing that no other reasonable conclusion can be reached than that the parties intended to abrogate the agreement. The testimony of both parties as to why the two continued to live under the same roof is consistent with the agreement. The fact that the quitclaim deed was not recorded until later was also adequately explained by the petitioner. The divorce was filed the month after the youngest child graduated, which is also in keeping with the agreement.

However, we agree with the chancellor and with the Court of Appeals that the petitioner failed to establish grounds for a divorce for general indignities. She testified as to certain indignities to which she was subjected. However, the only corroboration was that of her mother and sister. Her mother testified that there was a tenseness when she visited in the home and petitioner's eyes were tear-stained and red. According to her sister, the respondent's attitude was "nothing," and Mrs. Hair appeared to be very nervous and upset with red eyes, "nobody . . . speaking to anybody." It is true that in the case of both parties seeking a divorce, as here, only slight corroboration is required. *Ferguson* v. *Ferguson*, 251 Ark. 585, 473 S.W. 2d 869 (1971); and *McNew* v. *McNew*, 262 Ark. 567, 559 S.W. 2d 155 (1977). Mere statements of generalities or statements of opinion, beliefs and conclusions of the witnesses are not enough to constitute sufficient corroboration. Such testimony must be directed toward specific language, acts and conduct. *Welch* v. *Welch*, 254 Ark. 84, 491 S.W. 2d 598 (1973). The evidence here did not meet these tests and the chancellor correctly denied the divorce.

We deem it unnecessary to discuss petitioner's other contentions for reversal.

84

Affirmed in part and reversed in part.

HAYS, J., not participating.