Carolyn Ann RUSSELL *v.* James Edgar RUSSELL

81-175                                   628 S.W. 2d 315

Supreme Court of Arkansas
Opinion delivered February 22, 1982

*Howell & Price,* for appellant.

*Lightle, Beebe, Raney & Bell,* by: *A. Watson Bell,* for appellee.

STAN MILLER, Special Justice. James Edgar Russell sued Carolyn Ann Russell for divorce on August 29, 1980, alleging as grounds the three year separation of the parties. Since Mr. and Mrs. Russell married in 1963, they acquired both real and personal property, including a residence and stock in Matthews International Corporation, Mr. Russell's employer. The Russells are the parents of one child who was sixteen years of age at the time of the trial. The Court granted a divorce to Mr. Russell on the basis of the three year separation and ordered a division of the marital property. Mrs. Russell was awarded possession of the residence until the minor child reached his majority or finished high school at which time the Court ordered the residence to be sold and the proceeds divided equally. In making the division, the Court valued the Matthews International Stock and awarded it to Mr. Russell. Mrs. Russell received a monetary award equal to one-half the value of the marital property after adjustments for certain in-kind distributions not at issue here. Pursuant to the decree, Mr. Russell was permitted to satisfy the monetary obligation from his share of the net proceeds of the residence when it sold. Finally, the Court continued a temporary child support award of $200.00 per month and also ordered Mr. Russell to continue paying Mrs. Russell $500.00 per month in alimony until the residence is sold.

Appellant contends each of these findings are reversible error. We affirm the decision of the Chancellor as modified herein.

I.

Appellant first contends that the trial court erred in finding that there was sufficient corroboration of the three

year separation of the parties. We disagree. Mr. Russell's corroborating witness, Harold Peterson, testified that he worked with Mr. Russell and had known him for 23 or 24 years and had known Mrs. Russell for 17 or 18 years. He testified that during the entire time he had known them, they had both lived in White County; that he had visited in Mr. Russell's present home three or four times since the separation and that he had visited the home owned jointly by the parties shortly after the separation occurred. Mr. Peterson's uncontradicted testimony was that Mr. and Mrs. Russell had been separated since August 29th of 1977, a period of more than three years. Corroboration is as essential to the granting of a divorce on the grounds of three year separation as it is in any other case. But, where it is plain that the divorce action is not collusive, the corroboration may be comparatively slight. *Lewis* v. *Lewis*, 255 Ark. 583, 502 S.W. 2d 505 (1973); *Owen* v. *Owen*, 208 Ark. 23, 184 S.W. 2d 808 (1945); *Allen* v. *Allen*, 211 Ark. 335, 200 S.W. 2d 324 (1947). Nonetheless, there must be corroboration to some substantial fact or circumstance independent of the Appellee's testimony which would lead an impartial and reasonable mind to believe that the material testimony is true. *Lewis, supra; Welch* v. *Welch*, 254 Ark. 84, 491 S.W. 2d 598 (1973). Appellant insists that the Appellee's corroborating testimony does not meet the standard outlined in *Hair* v. *Hair*, 272 Ark. 80, 613 S.W. 2d 376 (1981). In that case, it was undisputed that the parties had continued to reside in the same household during the purported three year period of separation. The testimony of the parties in that case was in direct conflict as to when sexual relations terminated; and, according to the neighbors, there was no appearance of estrangement. In the instant case, the uncontradicted testimony of Mr. Russell and his corroborating witness is considerably more substantial than the corroborating testimony in *Hair, supra,* and is sufficient to corroborate the three year separation.

## II.

Appellant next contends that the trial court erred in not ordering a distribution of the marital property at the time the divorce decree was entered.

During his marriage to the Appellant, Mr. Russell acquired 535 shares of stock in Matthews International Corporation, his employer. During the three year separation period, he sold 200 of those shares. The trial court awarded Mrs. Russell an amount equal to one-half of the after-tax proceeds of the 200 shares of stock which were sold and one-half the value, as determined by the Court, of the shares which were awarded to Mr. Russell. After adjustments were made for the in-kind distribution of other marital property not at issue here, Mrs. Russell's monetary award totaled $18,310.93.

The Court provided that this amount would be paid to Mrs. Russell from the proceeds of the sale of the home which would occur when the parties' sixteen year old son attained his majority or finished high school. The Court retained jurisdiction to make adjustments in the event the house did not sell for enough money to enable the parties to divide their property as contemplated in the decree.

Appellant points out that under the arrangement ordered by the trial court she will not receive her monetary award for some period of time. During that time, the money is beyond her control, so she has no means of investing it to prevent its value from being eroded by inflation or to realize income from it. At the same time, she points out that this arrangement permits Mr. Russell to invest the cash he realized from the sale of the 200 shares and also to realize any appreciation in the value of the stock he was awarded. She also points out the possibility that the proceeds of the sale of the residence might be inadequate to satisfy Mr. Russell's obligation and that, in that event, she has no assurance the Appellee will have resources sufficient to make up the difference. Even though jurisdiction was retained, the Chancellor could do little to ameliorate this kind of circumstance.

The concern expressed by Appellant is consistent with the language of Ark. Stat. Ann. § 34-1214 (Cum. Supp. 1981) which clearly does not contemplate the delayed division of marital property ordered here. In relevant part, the statute provides that:

(A) *At the time a divorce decree is entered:*

(1) All marital property shall be distributed one-half (½) to each party unless the Court finds such a division to be inequitable. . . . (Emphasis Added)

We do not read this section so narrowly as to require the Chancellor in every case to mechanically divide the marital property in kind upon the granting of the Decree of Divorce. We do conclude, however, that the portion of the decree permtting the Appellee to delay payment of the Appellant's share of the marital property until the sale of the home following the minor child's attaining majority or graduation from high school is not consistent with the requirement of Ark. Stat. Ann. § 34-1214 that marital property be distributed at the time the decree is entered. Under these circumstances, the Chancellor should have required Mr. Russell to pay Mrs. Russell for her interest in the marital property within a reasonable time after the decree was entered. A reasonable period of time would, in this instance, be the time reasonably required for Mr. Russell to obtain a loan to satisfy the obligation. If Mr. Russell cannot satisfy the monetary award within a reasonable period of time, and certainly within 45 days from the date of this opinion, the undivided marital property will be divided in-kind and distributed to the parties. Therefore, the decree of the Chancery Court is modified as indicated and judgment entered accordingly. This is consistent with the usual practice of this Court to resolve controversies here without remand to the trial court whenever possible. *Ferguson v. Green*, 266 Ark. 556, 587 S.W. 2d 18 (1979). However, in the event the monetary award is not satisfied within the time specified the Chancellor is directed to take such further action as may be required consistent with this opinion.

Since the residence was owned by both parties as an estate by the entirety, it is not marital property which must be divided pursuant to Ark. Stat. Ann. § 34-1214. *Warren v. Warren*, 273 Ark. 528, 623 S.W. 2d 818 (1981). The award of possession of the home to Mrs. Russell as provided in the decree is a reasonable application of a well recognized equitable remedy and is consistent with the Appellant's

request at trial. *Schaefer* v. *Schaefer*, 235 Ark. 870, 362 S.W. 2d 444 (1962); *Fitzgerald* v. *Fitzgerald*, 227 Ark. 1063, 303 S.W. 2d 576 (1975); see also, *Stevens* v. *Stevens*, 271 Ark. 248, 608 S.W. 2d 17 (1980).

## III.

Appellant next contends that the trial court erred in valuing the 335 unsold shares of stock in Matthews International Corporation, Mr. Russell's employer. Mr. Russell purchased the stock in several transactions between 1968 and 1976. In each case he executed a promissory note in favor of the corporation for the purchase price. At the same time the various notes were executed, Mr. Russell executed a stock purchase agreement[1] which granted the corporation an option to repurchase the shares in the event of Mr. Russell's termination of employment (other than by death or retirement) if that termination occurred before the particular promissory note was satisfied or within a three year period thereafter. The purchase price of the shares pursuant to the option was the lesser of (1) the price paid by the stockholder, or (2) the book value of the stock as determined by the company's certified public accountants. This re-purchase right was optional with the corporation, so Mr. Russell, during the period of the restriction, could not require Matthews International to re-purchase the shares. According to Mr. Russell's testimony, the consolidated book value of the shares at the time of the trial was substantially higher than their original purchase price, but the shares could not be sold for their book value until all of the restrictions contained in the stock purchase agreement had been satisfied. Paragraph 12 of that agreement defines precisely when the shares become free of the restrictions:

12. Three (3) years after the date of the final payment of the total amount of the Note, the Company will

---

[1]In addition to the stock purchase agreement discussed here, these shares were also subject to a separate re-purchase agreement granted the company on July 28, 1977. The second agreement grants the corporation certain options to re-purchase the shares upon the employee's retirement or attaining of age 65. It is not relevant to the determination of the issues in this case.

deliver a certificate to the Employee representing the Stock purchased pursuant to this Agreement without the legend referred to in paragraph 10 hereof (but bearing the legend referred to in the Option Agreement), all collateral which has been deposited with the Company in accordance with paragraph 5 hereof and the Note marked "Satisfied in Full". At such time this Agreement shall be terminated and of no further force and effect.

We interpret this agreement to mean that the subject shares had a value equal to their book value if they had been delivered to Mr. Russell at the time of the trial and had a value equal to their cost if he had not yet received them.

Two Hundred of the 335 shares had been paid for and the three year period had expired, but no evidence was presented at the trial or in the Appellant's Motion for a New Trial which contradicts Mr. Russell's testimony that he had not received the shares at the time of the trial; nor does the Appellant allege any collusion between the Appellee and the corporation in withholding delivery of the shares. The Appellant's motion merely contained the general allegation that the Appellant "has learned that Matthews International Corporation stock of the type Plaintiff owned was actually worth $161.80 per share." The motion lacked supporting affidavits required by Rule 59 (c), Ark. R. Civ. P., so any specific facts which would shed light on whether or not Mr. Russell had actually received the shares are missing. We will not reverse the decision of the Chancellor on a disputed fact question unless the decision is clearly against the preponderance of the evidence. Rule 52, Ark. R. Civ. P. Without more, we cannot say that the decision of the Chancellor is clearly against the preponderance of the evidence and conclude that the net value of the shares at the time of the trial was correctly determined by the Chancellor to be $12,494.33.

## V.

The Appellant insists that the trial court should not have awarded all of the Matthews International Corporation

stock to the Appellee with an offsetting monetary award to the Appellant. Appellant contends that an equal division of the stock in kind or a forced sale of the stock are the only methods available to the Court to divide the stock in this case. We disagree. The language in Act 705 of 1979 [Ark. Stat. Ann. § 34-1214 (A) (3)] clearly contemplates the kind of division made by the Chancellor here:

> (3) Every such final order or judgment shall designate the specific property both real and personal, to which each party is entitled;

The intent of Act 705 of 1979 was to insure that the chancellor had the discretion to make an equitable division of all of the marital property with the least possible prejudice to either party. In this instance, Mr. Russell was only able to purchase the Matthews International Corporation stock because he was an employee of the company. The stock was subject to substantial retransfer restrictions and some of the stock was still subject to indebtedness at the time of trial. The testimony indicates that ownership of this stock is important to Mr. Russell's relationship with his employer, but the same stock would only have a monetary value to Mrs. Russell. The Chancellor's award of the stock to Mr. Russell with an offsetting monetary award to Appellant is a reasonable exercise of discretion amply supported by the record.

## VI.

Appellant claims the Chancellor should have awarded her 80% of the marital property. Such a division would require the application of the factors pertaining to the division of marital property found in Ark. Stat. Ann. § 34-1214 which reads as follows:

> "DIVISION OF PROPERTY. (A) at the time a divorce decree is entered:
>
> (1) all marital property shall be distributed one-half (½) to each party unless the court finds such a division to be inequitable, in which event the court shall make some

other division that the court deems equitable taking into consideration (1) the length of the marriage; (2) age, health and station in life of the parties; (3) occupation of the parties; (4) amount and sources of income; (5) vocational skills; (6) employability; (7) estate, liabilities and needs of each party and opportunity of each for further acquisition of capital assets and income; (8) contribution of each party in acquisition, preservation or appreciation of marital property, including services as a homemaker. When property is divided pursuant to the foregoing considerations the court must state in writing its basis and reasons for not dividing the marital property equally between the parties."

Appellant bases her contention that she should receive a larger share of the marital property on her physical condition and present prospects for future employment. There was some evidence of a physical impairment suffered by Mrs. Russell. Her testimony indicated that this impairment was partially a result of an accident which occurred at McCain Mall in 1975. In settling the claim arising out of that injury, she testified in depositions that she was disabled from working as a result of the accident, but records reflect that she had actually worked and received raises during the same period she alleged she was disabled. Further, the Chancellor may have found significance in the fact that Mrs. Russell's visits to the doctor increased substantially after this action was filed.

Appellant also urges this Court to consider her relative financial position as a basis for awarding her a larger share of the marital property, but the application of this factor and all of the other factors outlined in Ark. Stat. Ann. § 34-1214 (A) (1) contemplates an element of discretion best exercised by the Chancellor since he actually has the opportunity to hear the testimony of the witnesses. As this Court indicated in *Dennis* v. *Dennis,* 239 Ark. 384, 389 S.W. 2d 63 (1965), the opportunity to observe the witnesses firsthand puts the Chancellor in a position "immeasurably superior to ours" to resolve conflicting testimony. See also, *Marine Mart, Inc.* v. *Pearce,* 252 Ark. 601, 480 S.W. 2d 133 (1972). The

application of these factors is a factual determination; therefore, this Court will not reverse the decision of the Chancellor in making a division of marital property unless the property division is clearly against the preponderance of the evidence. Rule 52, Ark. R. Civ. P. We have reviewed the record in this case being particularly mindful of the factors identified in Ark. Stat. Ann. § 34-1214 urged by the Appellant and have concluded that an equal division of the marital property is supported by the preponderance of the evidence.

## VII.

Appellant next claims the trial court erred in providing that alimony be terminated when the house is sold. Appellant contends that she is completely unemployable and that the proceeds from the sale of the residence are so speculative that she may not be able to support herself when the alimony terminates.

The Chancellor heard the Appellant's testimony at the trial, including testimony relating to Mrs. Russell's illness, her employment record, and her monthly financial needs. In his Memorandum Opinion, the Chancellor indicated the reasons for terminating alimony when the house is sold:

> The court is not allowing alimony after the house is sold for the reason that she will be receiving substantial property settlement at that time, she settled her claim for disability, this period of time together with the long period of separation should be ample time for her to rehabilitate herself in order to secure employment.

The trial court has broad powers to determine the award of alimony, particularly when the divorce is granted on the grounds of three year separation, and we cannot say that the termination of alimony when the house is sold is clearly against the preponderance of evidence. *Narisi v. Narisi*, 233 Ark. 525, 345 S.W. 2d 620 (1961). As we have indicated earlier, we do not reverse the decision of the Chancellor on a disputed fact question unless the decision is clearly against the preponderance of the evidence. Rule 52, Ark. R. Civ. P. In the event Mrs. Russell's physical and financial circum-

stances at the time of the sale of the home are different from what the Chancellor anticipated in his Memorandum Opinion, our law is sufficiently flexible to permit the Chancellor to modify the alimony award at that time. See Ark. Stat. Ann. § 34-1211 (Cum. Supp. 1981); *Ford* v. *Ford,* 272 Ark. 506, 616 S.W. 2d 3 (1981); *Boyles* v. *Boyles,* 268 Ark. 120, 594 S.W. 2d 17 (1980); *Pledger* v. *Pledger,* 199 Ark. 604, 135 S.W. 2d 851 (1940).

## VIII.

Finally, the Appellant contends that the $500.00 per month alimony award and the $200.00 per month child support award are inadequate.

Appellant insists that Mr. Russell's admitted marital misconduct[2] should increase the amount of the alimony award. However, we think our holding in *Drummond* v. *Drummond,* 267 Ark. 449, 590 S.W. 2d 658 (1979) largely settles this issue. *Drummond* arose out of an alimony termination hearing, but the reasoning of that case is equally applicable here:

> ... Alimony is not awarded as a reward to the receiving spouse or as punishment of the spouse against whom it is charged. It is an effort, insofar as is reasonably possible, to rectify the frequent economic imbalance in the earning power and standard of living of the divorced husband and wife. Its continuation is not dependent on the good conduct of either spouse. While each case must and should be governed by its particular facts, it can be stated as a general principle that alimony should be terminated or modified by circumstances which relate to its need by the recipient or the ability to pay by the spouse against whom it is assessed.

Unless the alleged misconduct meaningfully relates to the need for support by the recipient or the ability to pay by the spouse against whom it is charged, the misconduct is not

---

[2]Appellee admitted in interrogatories filed with the Court that he was living with his former wife, Mrs. Joan Russell.

a permissible consideration in the determination of the alimony award. If we adopted Appellant's view that marital misconduct is a permissible consideration, we would, for dubious benefit, measurably expand the opportunity for acrimonious litigation. Consistent with our holding in *Drummond,* we conclude that Appellee's marital conduct prior to the divorce should not serve as a basis for increasing the alimony award. See *Byrd* v. *Byrd,* 252 Ark. 202, 478 S.W. 2d 45 (1972).

The amount of child support and alimony awarded must depend upon the particular facts of each case. *Dean* v. *Dean,* 222 Ark. 219, 258 S.W. 2d 54 (1953). Mr. and Mrs. Russell had been married for 18 years and had lived together for 14 years. Mrs. Russell testified that she had been under the continual care of physicians for the last year and that she was unable to work. However, she also has received a sizable award of marital property and will receive a substantial equity in the family residence when the home sells.

Mr. Russell's gross pay at the time of the trial was $2,903.00 per month. The record indicates that $881.24 is taken out of that amount each month for state and federal income taxes and social security withholding, leaving a net take-home pay of $2,021.76. Together, the child support and alimony awards total $700.00 per month, a substantial amount in relation to Mr. Russell's take-home pay. See *Knopf* v. *Knopf,* 264 Ark. 946, 576 S.W. 2d 193 (1979); see also *Stevens* v. *Stevens,* 271 Ark. 248, 608 S.W. 2d 17 (1980). In making the award, the Chancellor evidently believed that Mrs. Russell would be able to rehabilitate herself and find employment. If Mrs. Russell was not required to make the $275 monthly house payment from this amount, this award would be adequate. In this case, however, Mr. Russell will recover one-half of that portion of the house payment which reduces the principal balance of the mortgage when the house sells. In the meantime, he may deduct the alimony payment while Mrs. Russell will be required to report the alimony award, including that portion used to make the house payment, as taxable income. See, INT. REV. CODE of 1954, § 71 (a) and (d). Under these circumstances, we hold that the Appellant should receive an additional award of

$225 per month in alimony. That allowance is always subject to modification upon the application of either party. *Knopf, supra; Pledger, supra.*

The Appellant's attorneys are awarded a fee of $750.00 for services rendered in connection with this appeal, to be paid by Appellee. Costs of this appeal are assessed against the Appellee.

Affirmed as modified.

HICKMAN, J., not particpating.