TURNER *v.* TURNER.

4-9474 243 S. W. 2d 22

Opinion delivered April 30, 1951.

Rehearing denied June 25, 1951.

*O. E. Westfall* and *Gaughan, McClellan & Gaughan,* for appellant.

*Walter L. Brown,* for appellee.

PAUL WARD, J. This suit involves three main issues, viz., a divorce, a property settlement and an attorney's fee. The question of divorce can be disposed of summarily in favor of appellee since there is sufficient evidence to support the chancellor's finding and since appellant in his brief concedes the issue.

On February 15, 1949, Mrs. Dee Turner (appellee) filed suit for divorce against Alfred B. (Buck) Turner and asked that she be awarded her "dower interest in all property, both personal and realty owned by the defendant." The chancellor entered a decree of divorce on July 27, 1949, and retained jurisdiction for the purpose of adjudicating the property rights of the parties. Appellee then filed a separate petition asking the court for her allowances in accordance with § 4393 of Pope's Digest (34-1214 Ark. Stats. 1947). Two days later appellant filed a response stating that a complete settlement of all dower rights and interest of appellee in his property had been settled as set out and pleaded in his answer. In his answer appellant alleged that his wife filed suit for divorce on June 9, 1948; that reconciliation and settlement were reached; that he executed certain royalty deeds to appellee in complete and final property settlement with her, and that the suit was dismissed.

After a hearing on the issues involved the court rendered its decree on August 15, 1950, (as of date June 28, 1950) finding there had been no property settlement between the parties, and awarded Mrs. Turner an undivided one-third (for life) of the real estate her husband was seized of when the divorce was granted on July 27, 1949; a one-third (for life) of the production of oil and gas from certain mineral interests of her husband (this item was set out in detail); and also a one-third interest (in fee) in her husband's personal property as specifically described; and granted to her attorney a fee of $18,000.

The record is replete with motions, hearings, and orders pertaining to restraining certain oil companies

from paying royalty checks pending the final outcome of the controversy and to determine the nature and extent of appellant's property, but all of that seems to have terminated satisfactorily to both parties and need not be gone into here.

On the question whether there had been a previous property settlement there was conflicting testimony.

Mrs. Turner testified in substance: We were married twenty years and reared two children. We were poor when we married and I worked and helped until we separated. The property which he owns was accumulated during our married life. The income from the property averaged $24,000 a month from January to June of this year and produced more in 1948. I filed a suit for divorce in 1948 and we were reconciled in August. The reconciliation was brought about by him asking Mr. Homer Gentry, who is the minister of the church which I attend, to come to his room in the hospital; then Mr. Gentry came to my home to see me and stated that my husband had promised he would do better and go to church and would never mistreat me any more. The two of us went to see Mr. Turner on Monday afternoon when Turner began to promise me quite a few things if I would come back to him and told me what he would do. He said he would build a real fine home anywhere I wanted it, that he would give me an interest in the Ritchie lease and the Renfro lease; and that he was going to live better and go to church and we were going to be happy. He said he was going to give the interest just to prove to me he was going to live right and be good to me. I agreed to withdraw the divorce suit. The next day he left the hospital and I met him in Mr. Streett's office where I stated what had happened between us and that I wished to withdraw the suit. Mr. Streett looked over some papers we had and then we went to Mr. Gaughan's office, who drew up a deed for us and I put the deed on record. Nothing was said about my dower rights as a consideration for him signing this deed and nothing was said by anyone about dower rights; Buck (appellant) explained it to Mr. Streett and to Mr. Gaughan, and it was not a property settlement. It was only recently that I learned

it was supposed to be a property settlement. No one ever suggested to me that this deed was for my part of the other property. My income from the property described in the deed has been about $1,700 a month and the fixed income from all of his property was about $30,000 a month. On cross-examination: Mr. Turner first developed his oil properties about 1946 and prior to that time he worked in the oil field as a rig builder and that is where I first met him. When I went to the hospital I did not tell Mr. Turner that I wanted a property settlement, and property settlement was not mentioned. When we went back together we lived together from the latter part of August until January, 1949. The deed mentioned above which, leaving out certain portions that do not effect its meaning, is as follows:

"KNOW ALL MEN BY THESE PRESENTS:

"WHEREAS, A. B. Turner is the owner of an interest in the oil and gas leases in the production of oil and gas under the leases on the lands in Ouachita County, Arkansas, described as follows: (Here the land is described.)

"WHEREAS, it is the desire of the said A. B. Turner to assign, transfer and convey to his wife, Dee W. Turner, one-sixteenth of his interest in and to the leasehold estate which he holds covering the above described lands, to be paid to her as an overriding royalty interest, free and clear of all cost of production.

"NOW, THEREFORE, I, A. B. Turner, for and in consideration of the sum of Ten Dollars and other good and valuable considerations, receipt of which is hereby acknowledged from Dee W. Turner, do hereby grant, bargain, sell, convey and assign unto Dee W. Turner, and unto her heirs and assigns forever, the following property, to-wit: (Here is described in detail certain oil productions.)

"As stated above, the said Dee W. Turner is to become the owner, under this assignment, of one-sixteenth of the interest of A. B. Turner in the above leases, subject to the unitization agreements which may be shown of record covering said property, and which said one-

sixteenth of the A. B. Turner interest herein assigned and conveyed to the said Dee W. Turner is to be paid to her as an overriding royalty, free and clear of all costs of developments, production, etc., and the assignment is to be effective September 1, 1948, at 7 a. m.

"To have and to hold the same unto the said Dee W. Turner, and unto her heirs and assigns forever, with all appurtenances thereunto belonging.

"And I, Dee W. Turner, do hereby join in the execution of this assignment, and release and relinquish all of my dower interest in and to the property herein assigned, so that I may hold said property in fee simple and as my own property.

"Witness our hands on this 25th day of August, 1948.

(Signed) "A. B. Turner

(Signed) "Dee W. Turner."

Homer Gentry, a witness for appellant, testified in substance: I have known Mr. and Mrs. Turner approximately seven or eight years and I am the pastor of the church of which Mr. and Mrs. Turner are members. I am not sure however that Mrs. Turner is a member, but she attends church. At the instance of Mr. Turner I made a trip to see Mrs. Turner to persuade her to go to Camden and have a talk with Mr. Turner. I hesitated at first as I thought it might look like I was taking advantage of Mrs. Turner due to the fact that I was a good friend of the family, but Mr. Turner promised me at that time that whether he and Mrs. Turner went back together or not he would never drink any more whiskey and he had promised God that he was through with it, and so I told him that if that was so, especially for the sake of the children, I would do what I could to bring about a reconciliation. I went to see Mrs. Turner and she promised me she would meet me at the hospital Monday afternoon and talk with Mr. Turner, and she did. When we went into the room—I don't remember just what the first part of the conversation was; but Mrs. Turner told Mr. Turner that she doubted if he would be willing to meet her terms, and he asked her what they were, and

she said the first thing he would have to do would be to join the A.A. and make her a property settlement; Mr. Turner said he could not meet her request in the property settlement, that if he did and something should happen to him and she was a mind to do it, she could then come in and take the part that belonged to the children; I do not remember anything about what per cent of the property was requested, or that he promised, but Mrs. Turner told him those terms would have to be met in her attorney's office. She indicated she was satisfied with what he had offered her and said that they would have to go to her attorney's office. I don't believe anything was said about dismissing the divorce suit, but do remember she told him there would have to be a property settlement. I don't remember whether she asked him for one-third of his property or not.

A. B. Turner, appellant, testified in substance: When brother Gentry and my wife came to the hospital she said she wanted a property settlement; and she first asked for a third interest and I said I can't afford that; you are not entitled to it to start with and it wouldn't be fair to the children if we go back together, then we agreed on the one-sixteenth interest; she asked for a settlement "for keeps" and said she wasn't to have any further claim in the property, and then I agreed that day that I would give her this interest, and later on did give it to her. We went the next day and I had the papers fixed up and I gave them to her and then we went back together and lived together a while—from August until January of this year. When the papers were fixed up she seemed to be satisfied and it was my intent and purpose that that would be full settlement. On cross-examination: She said the only way she would ever come back to me was for her to have her own property and that before she dismissed this divorce suit she was going to get it and we agreed on the interest which I gave her, and I didn't give it to her as a gift, but was trading out with her; she surrendered a one-third dower interest in the property for a one-sixteenth interest that I gave her.

"Q. The point is she wasn't entitled to a one-third interest because she didn't help make the money?

"A. I made all of this money myself, every penny of it.

"Q. You didn't consider she was entitled to it?

"A. She had no part in helping make the money.

"Q. It was yours?

"A. Absolutely.

"Q. Did you draw up that agreement in writing?

"A. Yes, I made an assignment to her.

"Q. Where is that agreement?

"A. Here some place.

"Q. You gave her a deed?

"A. Yes, sir.

"Q. She has never at any time surrendered her dower interest in any of the property not in writing has she?

"A. No, sir.

"Q. What was your income in 1948?

"A. $190,000 or $200,000.

"Q. It was around $30,000 a month?

"A. Roughly."

Appellee on redirect examination:

"Q. Were you asked to release your dower interest?

"A. No, sir.

"Q. Was it ever suggested in any paper drawn up that you were releasing your dower?

"A. No, sir.

"Q. That was never thought of, mentioned or discussed was it?

"A. No, sir."

At this time Mr. Brown for appellee and Mr. Westfall for appellant stipulated in substance as follows: It is agreed and stipulated between counsel for both sides

that if Mr. J. Bruce Streett were present he would testify as follows: That Mr. and Mrs. Turner came to his office and told him that they were going back together and that she wanted the suit dismissed, and that Mr. Turner was turning over to her an operating interest in certain property, and she had the description, and she wanted him to look over the deed after it was drawn up.

This is all the testimony on the question of the property settlement mentioned above.

It will be noted that the testimony makes reference to an agreement which was entered into and signed, but since we find no such separate agreement in the record we assume that the witnesses were referring to the deed. We are of the opinion that the finding of the lower court, to the effect that no property settlement whereby appellee released all her rights of dower in her husband's property was entered into at the time of the reconciliation, is supported by sufficient evidence. Appellee was positive that no such final settlement was entered into and appellant was just as positive that one was entered into. Homer Gentry, Mr. and Mrs. Turner's pastor, was present and heard most if not all of the conversation between appellant and appellee and he states that reference was made to a property settlement. Testimony of Gentry however in this connection is not wholly irreconcilable with the contention of appellee. Even though a property settlement was discussed by the parties it might well have related to a settlement which appellee demanded before she was willing to dismiss her law suit and try living with her husband again, and the term ''property settlement'' could to them possibly have referred to a gift or a kind of atonement for former misconduct on the part of appellant. It is significant that after Mr. and Mrs. Turner visited the law office of Mr. Bruce Streett, who was her attorney, they then went to the law office of Mr. Gaughan, who is Mr. Turner's attorney in this case, and who, according to the testimony of Mr. Turner, was the man who did much of his legal business. If Mr. Turner had explained to his attorney that the deed was to be a full settlement of all

of Mrs. Turner's dower rights in and to his property, as he now contends it was, then it is not unreasonable to suppose that appropriate language to that effect would have been included. There is nothing in the deed itself which conveys from Mrs. Turner her rights of dower in the property of her husband, but on the contrary it appears that the only reason for her signing the deed at all was to release and relinquish all her dower rights in and to the property conveyed by said deed so that she would hold said property in fee simple and as her own property.

Appellant makes the contention that it is not equitable for appellee to be allowed to retain the benefits under the deed and in addition obtain one-third of appellant's property as set out in the decree, but we cannot agree with this contention. Having once decided the deed was not a settlement in lieu of dower, the deed would stand then as a gift from her husband to her or it would be in consideration of her dismissing the divorce suit and effecting a reconciliation. The question of who was to blame for them not being able to live together again is not an issue before us and cannot be considered in this connection. Appellant cites § 34-1214 Ark. Stats. 1947. The part pertinent to this issue reads as follows:

"In every final judgment for divorce from the bonds of matrimony granted to the husband, an order shall be made that each party be restored to all property not disposed of at the commencement of the action, which either party obtained from or through the other during the marriage and in consideration or by reason thereof; and where the divorce is granted to the wife, the court shall make an order that each party be restored to all property not disposed of at the commencement of the action which either party obtained from or through the other during the marriage and in consideration or by reason thereof;  . . .".

The question at once arises, was the property conveyed by this deed to appellee obtained "in consideration or by reason" of her marriage to Mr. Turner? On the authority of *McNutt* v. *McNutt*, 78 Ark. 346, 95 S. W.

778, we hold it was not so obtained. In the cited case the husband and wife were separated, though still married, and "concluded to live together again upon condition that the husband would deed her one-half of the farm on the 'State Line,' . . .". The deed was made and after McNutt and his wife had lived together a while the husband obtained a divorce, but the lower court refused to restore to him the above mentioned property. The husband appealed and relied on § 2684, Kirby's Digest (§ 34-1214, Ark. Stats.) for a reversal. Judge Wood for the court, after reviewing the Kentucky decisions based on practically the same statute as ours, approved the lower court, using the following language: "It follows from what we have said that the property in controversy was not in consideration and by reason of the marriage, and cannot be restored to appellant under the statute."

Appellant next contends that the chancellor erred in awarding appellee an undivided one-third interest for life in appellant's land, when he should have awarded her one-third of the land, specifically described, for her life. With the exception of some lots in the town of Stephens and 120 acres of land held by appellant in fee, all his real estate consisted of oil and gas interest in lands situated in several different sections. The decree described these interests in detail regarding sections and sub-sections, and then gave her a one-third interest for life in all of it. There was no error in the court's decision on this point in so far as it pertains to appellant's oil and gas interests. It was in harmony with former holdings of this court. *Butler* v. *Butler,* 176 Ark. 126, 2 S. W. 2d 63; *Warren* v. *Martin,* 168 Ark. 682, 272 S. W. 367.

The matter of assignment of dower in lands owned in fee by appellant will be discussed at the close of this opinion.

Finally it is contended that the court abused its discretion in allowing an excessive fee for appellee's attorney. Early in the proceedings the court allowed $1,000 and in the final order an additional fee of $17,000 was

allowed. Testimony by reputable attorneys was to the effect that $100 a day for each day actually engaged would be reasonable and, on this basis, appellee's attorney should be allowed $5,000 to $6,000. Other attorneys testifying for appellee thought a fee of from $25,000 to $40,000 would be reasonable. The lower court had a right also to take into consideration many other facts and circumstances developed in the case such as, the large amount of property involved, the effort of appellant to establish a previous property settlement, the amount of work performed by appellee's attorney and the responsibility involved, and the results obtained by the skill and efforts of said attorney. Considering all these things, a majority of the court thinks the decision of the chancellor in allowing a fee of $18,000 was not an abuse of his sound discretion.

We consider now the matter mentioned above relative to the assignment of dower in the lands owned in fee by appellant. The court's order found that he owned in fee certain real estate consisting of eighteen full lots and parts of two lots in the town of Stephens and 120 acres in sections 27 and 28; township 15 south, range 18 west, and then "Finds that plaintiff (appellee) should be awarded an undivided one-third life estate in said above described property." Section 34-1214 of the Ark. Stats. 1947 provides:

". . . and the wife so granted a divorce against the husband shall be entitled to . . . one-third of all the lands whereof her husband was seized . . . and every such final order or judgment shall designate the specific property both real and personal, to which such wife is entitled; . . ."

The same section then provides that if the real estate is not susceptible of division without prejudice to the parties the court shall order a sale. Pursuant to the above statute the court should have divided the real estate owned in fee by appellant, allocating one-third in value, in kind, to appellee for life, or if this could not be done without prejudice to the parties, the court should

have ordered a sale. This section, designated as § 2684 of Kirby's Digest was partially interpreted in the case of *Allen* v. *Allen,* 126 Ark. 164, 189 S. W. 841, at page 171. For the error indicated the cause must be reversed in so far as it relates to a division of the real property and remanded to the lower court for further proceedings, if requested by either party, consistent with this opinion. In all other respects the decree of the lower court is affirmed.