BRADLEY *v.* NEAL, EXCX.

5-2615                                      354 S. W. 2d 269

Opinion delivered February 26, 1962.

*J. H. Carmichael, Brooks Bradley* and *Josh W. McHughes,* for appellant.

*Moses, McClellan, Arnold, Owen & McDermott,* by *James R. Howard,* for appellee.

PAUL WARD, Associate Justice. This is a suit brought in Probate Court by appellants against the Executrix of the Estate of W. B. Warren, deceased, to collect an attorney's fee. Appellants sought to recover the sum of $3,500 and the trial court allowed them $1,750—hence this appeal.

*Facts.* The facts presently set out are not in dispute. Mr. Warren and his wife, who were people of substantial means though not wealthy, had one married daughter named Virginia (Warren) Neal—the appellee herein.

Mrs. Warren died in 1956 when Mr. Warren was about 63 years old, and Mrs. Neal was appointed executrix of her estate. Mrs. Warren's will left considerable property, both real and personal, to her husband for life with the remainder to her daughter, Mrs. Neal. The order of the probate court, dated September 2, 1958, discharging Mrs. Neal as executrix, shows no property as belonging to Mr. Warren.

On April 20, 1960 Mr. Warren wrote appellant, Brooks Bradley (attorney), engaging him to handle certain claims relating to the manner in which his daughter was handling his property and the estate of his wife. In the letter he stated: "I agree to pay you a reasonable fee commensurate with your services and the results obtained." On May 16 Mr. Warren executed an "assignment" to Bradley of two secured notes valued around $15,000 "for the purpose of securing advances made to me, represented by the notes, and further payment of a fair and reasonable fee, pending termination of litigation now pending in Pulaski County Chancery Court against Virginia Warren Neal".

*Litigation.* Only one witness, Mr. Bradley, testified concerning the extent of the legal services he rendered pursuant to his contract of employment. Set out hereafter is a brief summary of the essence and substance of his testimony.

(a) On April 25, 1960 he filed an eight page complaint in chancery court against Mrs. Neal in which it was alleged, in effect, that the final order discharging Mrs. Neal as executrix of her mother's estate was a fraud on the court, and that property taken in her name was the property of Mr. Warren. The prayer was for recovery of something like $52,000. Appellants say the recovery was in that amount but this is disputed by appellee in her brief. We think it likely that the amount claimed by appellants is excessive but we are convinced that a very substantial recovery was made as the result of the suit.

(b)  On the same day the above mentioned suit was filed (April 25, 1960) appellee took the necessary action to have her father confined in the state hospital. A few days later (on May 4, 1960) appellants filed a petition, in the nature of habeas corpus, in the probate court to effect a release of Mr. Warren from the state hospital. Two days later five members of the medical staff of the hospital found Mr. Warren to be without psychosis, and three days thereafter he was released.

(c)  On May 20, 1960 appellants filed a petition on behalf of Mr. Warren in probate court asking for the issuance of a citation against appellee to show cause why the final order of September 2, 1958 discharging her as executrix of Mrs. Warren's estate should not be set aside and a new accounting made. This proceeding was successfully terminated by appellants and they say a recovery of $2,795.44 was made.

(d)  Appellants say that Mr. Warren suffered a heart attack on or about September 27, 1960 and that they resisted an attempt to again place him in the state hospital and to have appellee appointed his guardian, but without success.

Based on the above appellants say the value of their legal services was in excess of $3,500. To substantiate their claim appellants placed in the record expert testimony of three well known attorneys of Little Rock, two of whom heard Bradley's testimony and the other investigated the files of Bradley. Attorney Gerland P. Patten estimated the value of the legal services "anywhere from $3,000 to $5,000" and said he would have charged $5,000. Mr. Frank Cox said he considered a fee of $3,500 to be reasonable. Mr. H. B. Stubblefield, who read the file and talked to Bradley, thought $3,500 to be "a rock bottom or a very minimum fee. . . ."

This Court, on several occasions, has attempted to state a rule by which the courts can arrive at a reasonable attorney's fee. In *Sain* v. *Bogle*, 122 Ark. 14, 182 S. W. 515, we said:

"We think it fairly deducible from our own cases and from the case note above referred to that in determining what is a reasonable attorney's fee, it is competent and proper to consider the amount and character of the services rendered, the labor, time and trouble involved, the nature and importance of the litigation or business in which the services are rendered, the amount or value of the property involved in the employment, the skill or experience called for in the performance of the services, and the professional character and standing of the attorneys."

The rule was expressed in somewhat different language in *Bockman* v. *Rorex,* 212 Ark. 948, 208 S. W. 2d 991, where it was stated:

" 'Legal services . . . cannot be apportioned either by time, or the amount of physical labor expended in drawing papers, attending courts, and oral arguments. It is the attorney's judgment, his learning, his responsibility and advice, which is relied upon, and which gives the peculiar value to legal services. Perhaps the most difficult and valuable services of the attorney may be rendered in considering his client's case, and giving him confidential information, before any visible act is done.' "

In the case of *Turner* v. *Turner,* 219 Ark. 259, 243 S. W. 2d 22, this Court unanimously approved an attorney's fee in the amount of $18,000 for services rendered in connection with the settlement of a divorce case. Attorneys testified, as experts, that a reasonable fee would be all the way from $5,000 to $40,000. In approving the amount fixed, we said:

"The lower court had a right also to take into consideration many other facts and circumstances developed in the case such as, the large amount of property involved, the effort of appellant to establish a previous property settlement, the amount of work performed by appellee's attorney and the responsibility involved, and the results obtained by the skill and efforts of said attorney."

From the above cases we find that courts, in fixing compensation for legal fees, consider the character of services, the time and trouble involved, the skill and experience called for, the professional character of the attorney, his judgment and responsibility and the results achieved. In addition to the above it is proper to consider the attorney's own estimate of the value of his services, and also the estimate of other attorneys who are familiar with relevant facts. *Lilly* v. *Robinson Mercantile Company,* 106 Ark. 571, 153 S. W. 820. Also, in the cited case and in many other cases we have held that consideration must be given to the knowledge and judgment of the trial judge who fixes the fee.

After weighing all the testimony and circumstances in this case by the rules above set out we have reached the conclusion that the weight of the testimony supports a fee for appellants in the sum of $3,000, which is the smallest amount fixed by the three expert witnesses.

In reaching the above conclusion we are not unmindful of the fact that the trial judge's own knowledge of the value of such services ordinarily carries great weight, as heretofore pointed out, especially when the services are rendered in his own court. Here however the major portion of appellants' services (resulting in the most recovery) were apparently rendered in connection with litigation in another court. Appellees point out that in some of this litigation there was no trial, but a settlement was effected. This fact, we think, is not of too much significance. In *Saad, Executor* v. *Arkansas Trust Company,* 225 Ark. 33, 280 S. W. 2d 894, where an attorney's fee was involved, we said: "It may have been due to their diligence and hard work that the contestants did not press for a trial."

Accordingly the decree of the trial court is reversed, and the cause is remanded with instructions to enter a decree in conformity with this opinion.