2009 Ark. App. 238
**Wesley JACKSON, Appellant,**

v.

**Susan JACKSON, Appellee.**

**No. CA 08–848.**

Court of Appeals of Arkansas.

April 1, 2009.

Barham Law Office, P.A., by: R. Kevin Barham, Paris, for appellant.

Charles E. Halbert, Jr., West Helena, for appellee.

KAREN R. BAKER, Judge.

Appellant, Wesley Jackson, appeals from a divorce decree entered in Logan County Circuit Court. Appellant presents three arguments for our review. First, appellant contends that the trial court abused its discretion in failing to consider appellee's earning capacity, education, experience and employability in awarding alimony to appellee. Second, appellant contends that the trial court abused its discretion in that the amount of alimony was excessive and the trial court failed to consult the support chart under Administrative Order No. 10. Third, appellant contends that the trial court erred in ordering the division of appellant's civil service retirement benefits, in not taking into account the amount appellant might have drawn if participating in the social security retirement system, and in not making in effect an equal division in favor of appellee without specific findings and factors. Finding no error, we affirm.

The parties were married on January 15, 1971, and separated on July 14, 2005.[1] Appellant filed a complaint for divorce on May 31, 2006, alleging general indignities as grounds for divorce. Appellee filed a counter-claim for divorce on grounds of

---

1. At the time of the parties' separation, the parties' children had reached the age of majority.

adultery, general indignities, and physical abuse. In the counter-claim, appellee also sought alimony and division of marital property.

Testimony showed that appellee and appellant owned a home on thirty-eight and one-half acres of land. Appellee continued to live in the marital home after the parties separated. Upon separation, appellant opened a checking account in his name into which he began depositing his pay check. Appellee testified that she lived on the approximately $11,000 remaining in the parties' joint account until February 2006, when appellant closed the account because the funds in the account had been depleted. Appellee then began to use credit cards as a means of covering basic living costs, even as a means by which to pay her personal property taxes in October 2006. During the separation, appellant continued to make the mortgage payment on the home; however, he made the payments from the funds in the parties' joint account. Appellee's estimated monthly expenses, which totaled approximately $989, were reflected on defendant's exhibit one.

As for appellee's employment history, she testified that she had many occupations throughout her married life. Her jobs included managing an apartment complex, working as a lab technician, working retail sales in a department store, and working in a bank. Appellee held various positions in the banking field, including a loan originator for American Heritage Bank. However, the parties agreed that she would not work after 1992. She testified that she had a history of back problems and that her back continued to worsen after she stopped working. Her back condition became debilitating in 1994, causing her to be completely unable to work. Appellee has undergone two surgeries during the time of the parties' separation. On March 8, 2006, she underwent lumbar surgery at which time she had a total decompression, a laminectomy, a diskectomy, a foramenectomy, and two titanium rods placed on each side of her spine, attached by a brace-bar, and pedicle screws to hold the rods in place. Post-surgery, she walked with a cane and wore a back brace and bone stimulator around the core of her body. She continued to have back pain, which caused her to undergo a second back surgery on December 22, 2006. She explained that she was on medication for depression and for esophageal reflux. She understood that after the divorce she would be without health insurance, and therefore, would need spousal support to help cover living and medical expenses. Appellee testified that the only way she would be able to work again was if she were allowed constant breaks from her work routine. Despite this fact, she was trying to find part-time employment.

Appellant testified that he was employed with USDA Agricultural Research Service, Dale Bumpers Small Family Farm Research Center in Booneville, Arkansas. He had been employed there for twenty-seven years. Defendant's exhibit two, appellant's 2006 Federal and State Income Tax Return, showed an adjusted gross income of $59,392. Appellant testified that his projected gross earnings for 2007 was $67,023. While employed at the USDA, he did not have social security withheld from his paycheck; rather, he was required to contribute to a separate fund—the Federal Employees Retirement, Civil Service Retirement System—in lieu of social security.

Appellant also testified that he had previously worked part-time for the County Line Sale Barn and that he had bought, sold, and traded livestock and farm equipment. The cattle he raised and sold were kept on the land surrounding the parties' home. He last sold cows in 2005, and he deposited the money in the joint checking account. He testified that upon separa-

tion, he took $2000 from the joint checking account and opened an account in his name. From that point on, his paychecks went into the account titled in his name only. The remainder of the balance of the joint checking account was used for appellee or on her behalf. He stated that during the separation, he paid the mortgage out of the joint account.

On July 11, 2007, the circuit court issued a letter opinion. The letter opinion contained the court's findings of fact and conclusions of law. The court's letter began generally with the determination of grounds for divorce, the division of post-separation debt, and the division of personal property. The court determined that the parties' real property and marital home would be sold. The court then turned to the disputed area of appellant's civil service retirement benefits; the court found that appellee was entitled to one-half of appellant's benefits including any amounts attributable to sick leave and/or medical leave through the entry of the divorce decree. The court then addressed the contested issue of alimony. The court found that appellant's yearly income was substantial in nature and that appellee currently had no income other than the temporary support previously awarded by the court. The court also took into consideration appellee's deteriorating health conditions impacting her ability to work and determined that in light of her health conditions, she would be unlikely to obtain suitable employment in the future. The court also considered that appellant appeared to be in good health, appellant was expected to earn $67,023 in 2007, and the reasonable cost of medical insurance available to appellant through this employment. Based upon these findings, the court awarded appellee alimony of $1500 a month. Appellee was also awarded attorney's fees of $750 plus costs. This appeal followed.

As his first point on appeal, appellant asserts that the trial court abused its discretion in failing to consider appellee's earning capacity, education, experience and employability in awarding alimony to appellee. We review equity cases de novo and will not reverse a finding of fact by the trial judge unless it is clearly erroneous or clearly against the preponderance of the evidence, and because the question of the preponderance of the evidence turns largely on the credibility of the witnesses, the appellate court will defer to the trial judge's superior opportunity to assess credibility. *Jones v. Jones,* 43 Ark.App. 7, 12, 858 S.W.2d 130, 134 (1993); *Appollos v. Int'l Paper Co.,* 34 Ark.App. 205, 206, 808 S.W.2d 786, 787 (1991); Ark. R. Civ. P. 52(a). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Sanford v. Sanford,* 355 Ark. 274, 137 S.W.3d 391 (2003). The burden is on appellant to show that the findings are erroneous. *Leathers v. W.S. Compton Co.,* 316 Ark. 10, 14, 870 S.W.2d 710, 712 (1994).

The award of alimony is not mandatory, but is instead discretionary, and the trial court's decision regarding any such award will not be reversed absent an abuse of discretion. *Powell v. Powell,* 82 Ark.App. 17, 110 S.W.3d 290 (2003). The purpose of alimony is to rectify, insofar as is reasonably possible, the frequent economic imbalance in the earning power and standard of living of the divorced parties in light of the particular facts of each case. *Holaway v. Holaway,* 70 Ark.App. 240, 16 S.W.3d 302 (2000). The primary factors to be considered in awarding alimony are the need of one spouse and the other spouse's ability to pay; secondary factors that may also be considered in setting alimony include (1) the financial circumstances of

both parties, (2) the amount and nature of the income, and (3) the extent and nature of the resources and assets of each of the parties. *Id.* As this court explained in *Mitchell v. Mitchell,* 61 Ark.App. 88, 964 S.W.2d 411 (1998), neither this court, nor the supreme court, has ever attempted to reduce the amount of alimony to a mathematical formula. Presumably, it has been thought that the need for flexibility outweighs the corresponding need for relative certainty. *Id.* In setting the amount of alimony, the trial court may consider a range of acceptable alternatives. *Id.*

The trial judge in this case found that appellant's yearly income was "substantial in nature." The court found that appellee currently had no income—other than the temporary support previously awarded by the court—due to her inability to work from continuous health issues. Although appellee testified as to her minimum monthly expenses, appellant provided no evidence of his monthly expenses, outside his testimony of the debt owed on his vehicle and the $4000 he borrowed to hold off family debts during the pending divorce. The testimony also revealed that appellee was a fifty-four-year-old woman with a high school education. Although she had worked outside the home for many years, the parties agreed that she would no longer remain in the work force after 1992. The trial court found appellee's testimony as to her pain and need for medication to be credible in light of the fact that her back condition worsened since 1992, causing her to have to undergo two back surgeries. With this testimony, the trial court found that appellee's employability was "extremely limited at best." Appellant, on the other hand, was in good health and had been employed with the USDA since 1980. There was no indication in the testimony that appellant's employment would cease before the date of his retirement. Here, appellee had virtually no means of support other than the

temporary support awarded by the court, and she was likely to be unable to earn an income due to her back condition. Meanwhile, appellant retained the ability to earn a substantial income. Under these circumstances, we cannot find that the trial court failed to consider appellee's earning capacity, education, experience, and employability in awarding alimony to appellee.

■ Second, appellant asserts that the trial court abused its discretion in that the amount of alimony was excessive and the trial court failed to consult the support chart under Administrative Order No. 10. This argument is without merit. Appellant directs this court to the language in Supreme Court Administrative Order Number 10 and presents no case law in support of his argument.

The Family Support Chart, set forth in Administrative Order No. 10, is intended as a set of guidelines in awarding child support. While we are mindful that section III(e) does deal with "Spousal support," that section is only relevant in situations where child support is at issue and spousal support is appropriate for the custodial parent. In the case before us, the record indicates that the parties' children had reached the age of majority, and therefore, child support was not an issue. Moreover, section III(e) is for purposes of "temporary support only." Administrative Order No. 10 § III(3) states that, "For the purposes of temporary support only, a dependent custodian may be awarded 20% of the net take-home pay for his or her support in addition to any child support awarded." Section III(3) further states that, "For final hearings, the court should consider all relevant factors, including the chart, in determining the amount of any spousal support to be paid." Accordingly, we are not compelled to accept appellant's interpretation, which we hold is contrary

to the plainly stated wording of Administrative Order Number 10.

■ ₈We turn now to appellant's subpoint, concerning his assertion that the award of alimony was in excess of the guidelines and in excess of the needs of appellee. As discussed above, the trial court is not required to reference the Family Support Chart set forth in Administrative Order Number 10 in determining an award of only alimony. We note, however, that in the trial court's oral ruling at the temporary hearing, the trial court specifically referenced the Family Support Chart in his determination of temporary alimony.

Moreover, as this court explained in *Mitchell, supra,* our courts have never attempted to reduce the amount of alimony to a mathematical formula; rather, in setting the amount of alimony, the trial court may consider a range of acceptable alternatives. *Id.* The primary factors to be considered in awarding alimony are the need of one spouse and the other spouse's ability to pay. *Cole v. Cole,* 89 Ark.App. 134, 201 S.W.3d 21 (2005). *Cole* also lists other, non-exhaustive factors for the circuit court's consideration, including the parties' financial circumstances, the amount and nature of the parties' income, both current and anticipated, the extent and nature of the parties' resources and assets, and the parties' earning ability and capacity.

We cannot say that the circuit court clearly erred in determining the amount of alimony awarded to appellee in this case. While appellant argues that the amount of alimony exceeded appellee's needs, the trial court's order indicated that it considered the proper factors, including appellee's significant health problems impacting her ability to earn an income; appellee's two separate spinal surgeries during 2006 and the need for constant control of her pain with medication; appellee's very limited prospects of obtaining any suitable employment; appellee's exhibit one ₉showing her monthly expenses totaling $989; and the fact the amount of estimated monthly expenses did not reflect any amount for rent and was based on her monthly medical and prescription expenses being covered by plaintiff's insurance, which would no longer be the case after the divorce decree was entered. The trial court also considered appellant's good health and the likelihood that he could be able to continue working until retirement age, and appellant's 2007 projected gross earnings of $67,023. In sum, the trial court determined that appellee was entitled to alimony of $1,500 per month and that appellant had the substantial ability to pay. Under these facts, the trial court did not abuse its discretion in evaluating the needs of appellee and determining the proper amount of alimony.

■ For his final argument, appellant asserts that the trial court erred in ordering the division of appellant's civil service retirement benefits, in not taking into account the amount appellant might have drawn if participating in the social security retirement system, and in making what amounted to an unequal division in favor of appellee without specific findings and factors. Appellant concedes that our supreme court has previously held that retirement plans of a party are marital property and subject to division, even if participation in such plans is mandated by law or chosen by the party, and is in lieu of social security benefits. *See Gray v. Gray,* 352 Ark. 443, 101 S.W.3d 816 (2003); *Skelton v. Skelton,* 339 Ark. 227, 5 S.W.3d 2 (1999); *Gentry v. Gentry,* 282 Ark. 413, 668 S.W.2d 947 (1984); *Day v. Day,* 281 Ark. 261, 663 S.W.2d 719 (1984). The rationale behind the holding in these cases is that "[S]ocial security benefits are a type of public welfare, or social insurance. Social security benefits provide revenue or income; however, social security is not

contractual in nature and does not become a property interest. It is subject to change by congressional act at any time." *Skelton,* 339 Ark. at 233, 5 S.W.3d at 5.

Appellant, however, urges us to distinguish this case from the cases cited above, stating "the distinction here is that in none of the cited cases did the appellant produce evidence of how much his social security benefits would have been had he been in that system." Appellant cites no authority for this proposition. Here, appellant accessed the social security website and personally calculated that the amount of his benefits would have been $1704 a month. Appellant then argued that the $1704 should be excluded from the divi-sion. Appellant's calculation as to what his potential social security benefits might have been is of no moment. Under our supreme court's well-established precedent, appellant's civil service retirement was marital property and subject to division, and the trial court was not required to consider the amount appellant might have drawn if participating in the social security system.

Based on the foregoing, we affirm on all points.

ROBBINS and KINARD, JJ., agree.