2009 Ark. App. 758

**Leonard D. McCRACKEN, Appellant,**

v.

**Tammy G. McCRACKEN, Appellee.**

**No. CA 09–147.**

Court of Appeals of Arkansas.

Nov. 11, 2009.

Worsham Law Firm, P.A., by: Richard E. Worsham, Little Rock, for appellant.

Howard C. Yates, Morrilton, for appellee.

COURTNEY HUDSON HENRY, Judge.

Appellant Leonard McCracken brings this appeal from a decree entered by the Conway County Circuit Court divorcing him from appellee Tammy McCracken. For reversal, appellant contends that the trial court erred in determining that the parties' home and surrounding acreage are marital property. We find no error and affirm.

Before the parties' marriage in 1999, appellant inherited the family farm in north Arkansas from his father. In 2005, appellant sold the farm and used the proceeds to purchase twenty-six acres of land in Conway County and to build a home on that property. As reflected by the warranty deed evidencing the purchase, title to this property was placed in the names of "Leonard Dan McCracken and Tammy McCracken, husband and wife." In March 2007, appellee executed a quitclaim deed transferring her interest in the property to appellant.

In October 2007, appellee filed a complaint for divorce on the basis of general indignities. In the proceedings, appellee sought to set aside the quitclaim deed on grounds of coercion and undue influence, and she claimed that the home and twenty-six acres were marital property by virtue of the warranty deed. Appellant opposed appellee's claim that the home was marital property and contended that, when the land was purchased, the parties had entered into an agreement for appellee to subsequently convey her interest to him so that his son from a previous marriage would inherit the property.

In her testimony at trial, appellee testified that she and appellant decided to sell the farm and use the money to buy other land on which to build a marital home. She explained that she acted as general contractor in the construction of the home and that she worked every day during the five months that the home was under construction. She said that she hired all of the subcontractors and that she also did much of the work herself. When asked who made the decision about placing title to the property in their joint names, appellee responded, "I don't know that we made a decision, it was just what we did." Appellee stated that holding title jointly was not an issue or even a topic of any discussion. She said that she had no question in her mind about the home being jointly owned property and that appellant never indicated that he felt differently.

Regarding the circumstances surrounding her execution of the quitclaim deed, appellee testified that she owed child support from a previous marriage in the

amount of $6,300 and that a court had issued a body attachment for her arrest because of the arrearage. She said that she had no funds of her own to meet that obligation and that appellant agreed to pay the arrearage to prevent her from going to jail. Appellee related that appellant took off a day from work to procure the funds but that, instead of going to obtain the money, appellant drove to an abstract company and demanded that she sign a quitclaim deed before he would pay the arrearage. She testified that appellant dragged her out of the truck by her hair and told her that she could either sign the deed, which was already prepared, or he would take her to jail. Appellee said that she did not want to sign the quitclaim deed but felt that she had no choice in the matter. She testified that, after she signed the deed, they immediately drove to the courthouse where appellant recorded the deed. Afterward, appellant paid appellee's child-support obligation.

Appellant testified that, before purchasing the twenty-six acres, he and appellee discussed his intention to have the property titled solely in his name so that his son would inherit the property. Appellant said that, at closing, he noticed that the warranty deed listed both of their names and that he voiced an objection about it. He said that appellee agreed to convey her interest to him at some future date and that, based on appellee's assurances, he went forward with closing because he was concerned that the seller might withdraw from the transaction if there was any delay. Appellant testified that, despite his prompting, appellee did not complete the paperwork necessary to consummate the agreement, so he had the quitclaim deed prepared six weeks before appellee signed it. He said that he had been asking appellee to drop by the abstract company to sign the deed and that they did so while they were together that day to pay appellee's child-support arrearage. Appellant said that the signing of the quitclaim deed and his payment of appellee's arrearage were unrelated. He denied that he forced appellee to sign the deed.

Appellant agreed that appellee was the contractor for the construction of the home and that she devoted much time and effort to the project without compensation. He testified that he deposited the proceeds from the sale of his farm into a separate account and that he transferred money from that account into a joint account out of which they paid the costs of construction.

At the conclusion of the hearing, the trial court stated its intention to grant appellee's request for a divorce but asked the parties to brief the issues regarding the status of the home place. The trial court subsequently issued a letter opinion outlining its ruling. The court found that the conveyance to the parties as husband and wife created a tenancy by the entirety. The court also rejected appellant's claim that there was an agreement for appellee to convey her interest in the property to appellant. Further, the trial court set aside the quitclaim deed, finding that appellant coerced appellee to sign it. Thus, the court concluded that the home place was marital property, which the court ordered to be sold and the proceeds evenly divided.

Appellant's initial contention is that the trial court erred in finding that the parties intended to create a tenancy by the entirety when the property was purchased. He notes that it is undisputed that the parties used his separate funds to purchase the property and to build the home. Appellant argues that his testimony established that title was placed in their joint names by mistake and that they reached an

agreement for appellee to convey the property to him.

Property that is acquired by inheritance is not considered marital property. Ark.Code Ann. § 9–12–315(b)(1) (Repl.2008). Also, property that is acquired in exchange for non-marital property is excluded from the definition of marital property. Ark.Code Ann. § 9–12–315(b)(2). However, when property is placed in the names of a husband and wife, a presumption arises that they own the property as tenants by the entirety. *Young v. Young*, 101 Ark.App. 454, 278 S.W.3d 603 (2008). This presumption can be overcome only by clear and convincing evidence that a spouse did not intend a gift. *Id.* Also, when a husband and wife hold real property as tenants by the entirety, it is presumed that the spouse who furnished the consideration made a gift in favor of the other spouse, and this presumption must also be rebutted by clear and convincing evidence. *Keathley v. Keathley*, 76 Ark.App. 150, 61 S.W.3d 219 (2001).

Although we review traditional equity cases de novo, the test on review is not whether we are convinced that there is clear and convincing evidence to support the trial court's findings but whether we can say that the trial court's findings are clearly erroneous. *Statler v. Painter*, 84 Ark.App. 114, 133 S.W.3d 425 (2003). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake was made. *A.R. v. Brown*, 103 Ark. App. 1, 285 S.W.3d 716 (2008). In cases where clear and convincing evidence is required, the appellate court still defers to the superior position of the trial court to evaluate the evidence. *Hearne v. Banks*, 2009 Ark. App. 590, —— S.W.3d ——, 2009 WL 2958011, (2009).

In this case, appellant used his non-marital funds to purchase the property and to build the home. Yet, the warranty deed conveyed title to both parties as husband and wife. The trial court found that appellant made a gift to appellee of the property and funds used to construct the home. In so finding, the trial court expressly rejected appellant's claim that the parties intended the land and home to remain his separate property. Because we must defer to the trial court's credibility determinations, we are unable to conclude that the trial court's decision is clearly erroneous.

Next, appellant argues that the trial court erred by setting aside the quitclaim deed appellee executed conveying her interest in the property to him. Appellant notes that the trial court relied on the decision in *O'Quin v. O'Quin*, 217 Ark. 321, 230 S.W.2d 16 (1950), to presume that the deed was invalid and to place the burden on him to prove that the transaction was fair and free of undue influence.[1] He further argues that the trial court erred by presuming the deed to be invalid without proof that he was the dominant party in the relationship.

---

1. Appellant makes the argument that *O'Quin* is no longer the law with the passage of Arkansas Code Annotated section 18–12–401(a) (Repl.2003). This statute provides that "any deed of conveyance ... by a married man directly to his wife or by a married woman directly to her husband shall be construed as conveying to the grantee named in the deed the entire interest of the grantor in the property conveyed ... as fully and to all intents and purposes as if the marital relation did not exist between the parties to the deed." The statute, however, was enacted in 1935 and thus predates the decision in *O'Quin*. Therefore, appellant's argument that the statute undercuts the holding in *O'Quin* is misplaced.

It is well settled that, once a spouse has shown that a confidential relationship has existed with the other, and that the other spouse was the dominant party in the relationship, it is presumed that a transfer of property from the former to the latter was invalid due to coercion and undue influence. *Young, supra* (citing *Myrick v. Myrick,* 339 Ark. 1, 2 S.W.3d 60 (1999)). In such a case, the spouse to whom the property was transferred bears the burden of rebutting the presumption by producing evidence showing that the transfer of property was freely and voluntarily executed. *Id.* In *Myrick, supra,* the supreme court made it clear that the presumption of invalidity is invoked, not by the mere existence of a relationship of confidence, but only when the testimony further shows that the donee occupied such a superior position of dominance or advantage as would imply a dominating influence.

Here, the trial court made no specific finding that appellant was the dominant party in the relationship. However, in the absence of a showing to the contrary, we presume that a court acted properly and made the findings necessary to support its judgment. *See Coon v. State,* 76 Ark.App. 250, 65 S.W.3d 889 (2001). We observe that appellee testified that appellant had an ongoing drinking problem and that he was emotionally and physically abusive to her. The trial court *could* rely on this testimony to support a finding of dominance. However, even if the trial court erred by giving appellee the benefit of the presumption of invalidity, the fact that the trial court may have based its decision on an erroneous conclusion does not preclude this court from reviewing the entire case de novo. *Ferguson v. Green,* 266 Ark. 556, 587 S.W.2d 18 (1979). An appeal in an equity case opens the whole case for review. *Id.* All of the issues raised in the court below are before the appellate court for decision, and de novo review on appeal in equity cases involves the determination of fact questions as well as legal issues, if necessary. *See Jones v. Abraham,* 341 Ark. 66, 15 S.W.3d 310 (2000). We will uphold the trial court's decision unless it is clearly erroneous. *Id.*

When it is discovered that the party in whose favor the conveyance was made possessed an undue advantage over the grantor and exercised an improper influence over the grantor, it is an act against conscience and within the cognizance of a court of equity. *Duncan v. Hensley,* 248 Ark. 1083, 455 S.W.2d 113 (1970). Also, a contract made by a party under compulsion is void because consent is of the essence of a contract, and where there is compulsion, there is no voluntary consent. *Id.* To sustain a claim of duress, one must prove that she was compelled, not merely persuaded, to do what she did. *Oberstein v. Oberstein,* 217 Ark. 80, 228 S.W.2d 615 (1950). When it is contended that a deed was obtained by duress or undue influence, the law requires that the proof be clear, cogent, and convincing before the deed can be set aside. *Millwee v. Wilburn,* 6 Ark.App. 280, 640 S.W.2d 813 (1982).

In the case before us, the trial court accepted as credible appellee's testimony that appellant coerced her to sign the quitclaim deed. According to appellee, she was under threat of imprisonment for non-payment of child support and lacked the funds to satisfy that obligation. Appellant agreed to provide the money to prevent her from going to jail, but instead of abiding by that promise, appellant drove appellee to an abstract company and demanded that she sign the deed or else he would turn her over to the authorities. In light of these circumstances, we cannot say

that the trial court's findings of coercion and undue ⌊9⌋influence are clearly erroneous. Accordingly, we affirm the trial court's decision to rescind the quitclaim deed.

Affirmed.

KINARD, J., agrees.

ROBBINS, J., concurs.

JOHN B. ROBBINS, Judge, concurring.

I agree to affirm the trial court's judgment, and I agree with most of the majority's rationale for doing so. However, I do not believe it necessary for our court to make a factual finding that appellant was the dominant spouse in the parties' relationship in order to affirm. But for that portion of the majority opinion that ventures into that area, I am pleased to join.