2010 Ark. App. 532

**Ronnie PEARCE, Appellant**

v.

**Glynda PEARCE, Appellee.**

No. CA 09–1407.

Court of Appeals of Arkansas.

June 23, 2010.

James Lucas Graham, C. Shane Ethridge, Hot Springs, for appellant.

David Maddox, Maddox & Maddox, Mena, for appellee.

KAREN R. BAKER, Judge.

Appellant Ronnie Pearce appeals from a September 16, 2009 final decree of divorce entered in Polk County Circuit Court. On appeal, he asserts that the trial court erred in three respects: (1) in determining three tracts of land appellee conveyed to appellant by quitclaim deed to be the sole property of appellee, (2) in awarding alimony to appellee, and (3) in requiring appellant to pay half of the credit card debt on a card used solely by appellee. We find no error and affirm on all three points.

### Facts

The parties were married on November 16, 1985, and appellant filed a complaint for divorce on January 29, 2009. Appellee Glynda Pearce responded by filing an answer, which included a counterclaim for divorce and other relief. The parties had two children during their marriage, but both were of the age of majority and living outside the marital home. At the final hearing on July 29, 2009, appellant withdrew his complaint and waived corroboration of grounds for divorce, and the court proceeded to grant appellee an absolute divorce on the grounds of general indignities.

At the time the complaint was filed, the parties owned three pieces of real property that had been purchased during the course of the marriage: the marital home and two rental properties. Previously, on August 28, 2006, appellant had executed and delivered to appellee a quitclaim deed conveying all of his right, title, and interest to all three properties. The deed was executed after appellee learned that appellant had been having an extramarital affair, and appellant asked her what he could do so that she would not divorce him. The quitclaim deed was filed on September 1, 2006. The parties remained together after the execution of the deed until they separated on January 2, 2009. The trial court enforced the quitclaim deed and declared that the real property was the sole and separate property of appellee. The parties agree that the combined value of the property was approximately $200,000; and the debt owing thereon was approximately $93,000, which was also allocated to appellee.

Additionally, the parties had non-real estate debt consisting of a Unity One Credit Union credit card with an approximate balance of $6000; a Vicksburg Railroad Credit Union credit card with a balance of approximately $600; a Sears credit card with an approximate balance of $7,636.52; and an MBNA credit card with an approximate balance of $43,419.14. The trial judge determined that all of the preceding non-real estate debt was marital debt for which each party was liable for one-half of the total $57,655.66.

Finally, the trial court also awarded alimony to appellee in the amount of $250 per month for a period of four years. Appellee is a school teacher with a base salary of approximately $38,000 per year. Appellant formerly worked for the Kansas City Southern Railway (KCS) where he earned approximately $80,000 per year, but he was terminated from his position on June 20, 2009. He previously had been terminated and rehired by KCS in 2000 and 2003, but it is unclear if he will be rehired in the future. At the time of the hearing, appellant was collecting approximately $905 per week in unemployment and union benefits. Appellee takes medication—that currently costs thirty dollars per month—that she will have to take for the rest of her life to treat a sexually transmitted disease (STD) appellant gave her in 1988 as a result of a previous extramarital affair.

### The Quitclaim Deed

In *McCracken v. McCracken*, 2009 Ark. App. 758, 5, 358 S.W.3d 474, 478, this court stated the scope of review in cases where a party seeks to set aside a deed:

> Although we review traditional equity cases de novo, the test on review is not whether we are convinced that there is clear and convincing evidence to support the trial court's findings but whether we can say that the trial court's findings are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake was made. In cases where clear and convincing evidence is required, the appellate court still defers to the superior position of the trial court to evaluate the evidence.

(Internal citations omitted.)

Appellant argues that the trial court erred in validating the quitclaim deed that he executed in favor of appellee (1) because appellant lacked the requisite intent to relinquish dominion and control over his interest in the property and (2) because appellee possessed an undue advantage over him and exercised an improper influence over him. For both reasons, he argues that the quitclaim deed was rendered ineffective. It is undisputed that the quitclaim deed in question was executed by appellant in favor of appellee, after appellee learned of an extramarital affair he engaged in during the early part of 2006. There is conflicting evidence as to whether appellee demanded that he sign the deed or whether he did so willingly in an attempt to salvage the marriage.

The record reveals that appellant was frequently unfaithful during the parties' marriage, beginning at least in 1988 when he gave appellee an STD. Appellee testified that after discovering the 2006 affair, she had intended to divorce appellant, but that appellant begged her not to divorce him. Appellee avers that appellant told her that he would give anything or sign anything to avoid a divorce. Appellee had the quitclaim deed drawn up, and appellant signed it.

Here, the trial court confirmed the quitclaim deed. The court noted that whether the deed was obtained at appellee's insistence or by virtue of appellant's good faith is irrelevant. Rather, the court observed that a transfer of property that is made in consideration for a spouse's agreement not to file divorce proceedings is valid, citing *Turner v. Turner*, 219 Ark. 259, 243 S.W.2d 22 (1951). The judge also stated that the transfer would be valid without the consideration given in the instant case when there is no indication at the time of the transfer that the grantor would regain an interest in the future, citing *Horton v.*

*Horton,* 92 Ark.App. 22, 211 S.W.3d 35 (2005).

Appellant argues that the transfer was caused by the coercion and duress of appellee upon him and attempts to distinguish the cases relied upon by the trial court. In *Turner, supra,* the husband approached the wife and offered to deed her some rights to land as a show of good faith that he had changed his ways and would live straight. There, our supreme court found the conveyance was simply a gift, and that the marriage, or attempt to reconcile, was not the basis of consideration. Appellant claims that the husband in *Turner* signed the deed of his own free will, while here, he did not. In *Horton, supra,* the wife filed for divorce following an affair by the husband, and he deeded her the house as a gift so that she and the children would not be out on the street. Again, the husband initiated the transaction, and there was no promise of reconciliation. In both cases, the courts found that there was no undue influence and duress, as appellant claims occurred here. Finally, in *Cole v. Cole,* 53 Ark.App. 140, 920 S.W.2d 32 (1996), appellant notes there was simply a transfer of property from a husband to wife without any evidence to justify overturning the deed. Here, appellee threatened him with divorce, and appellant claims he did not sign the deed willingly.

Appellee also cites to *Turner, Horton,* and *Cole.* She argues that appellant admitted that there was no discussion or agreement that she would deed the property in question back to him. She recorded the deed only three days after appellant signed it. Appellee testified that she believed the transfer of the real property *was a gift* bestowed upon her by appellant in an attempt to win back her favor after having been caught in an adulterous relationship. *See Dennis v. Younts,* 251 Ark.

350, 472 S.W.2d 711 (1971) (upholding the deed from husband to wife as a gift).

Appellant claims he had no such donative intent and, in fact, that he did not relinquish dominion and control over the property subsequent to the execution of the deed. As such, he claims the delivery of the deed was invalid, which renders the deed ineffective. He cites *Crowder v. Crowder,* 303 Ark. 562, 798 S.W.2d 425 (1990), for the proposition that delivery of a deed is only valid when the person delivering the deed fully intends to relinquish dominion and control over his interest in the property. Additionally, according to *Crowder,* the grantor must also intend to pass title to the property immediately. He claims that even though the filing of a duly executed and acknowledged deed typically raises a rebuttable presumption of valid delivery, the presumption is not conclusively established where there is proof of other factors, pertaining to the deed, that may rebut the presumption. *See Corzine v. Forsythe,* 263 Ark. 161, 563 S.W.2d 439 (1978). He continued to exert dominion and control over the properties subsequent to the execution of the deed until the parties separated more than three years after the deed was executed, and performed some duties through the final hearing. He continued to live in the marital residence, exercised dominion and control over both that residence and the two rental properties, paid the mortgage, taxes, insurance, collected rent and performed landlord duties. Additionally, his name remained on the debts associated with the properties. Appellee does not dispute these facts; she testified that she expected to take things over, but she did not because he "became so ugly" with her about it.

Appellee asserts that the law presumes a gift when the donor registers legal title in a family member's name. *See Perrin v. Perrin,* 9 Ark.App. 170, 656 S.W.2d 245

(1983). Additionally, she notes that in *Corzine,* our supreme court held that a presumption of valid delivery attaches when a deed is recorded, and here, she notes that the deed was recorded a mere three days after execution. She counters appellant's interpretation of the *Crowder* decision with the following quotation:

> We did not, however, alter a basic premise in the law of property that a deed is inoperative unless there has been a delivery to the grantee, and in order to constitute delivery it must be the intention of the grantor to pass title immediately and that the grantor shall lose dominion over the deed.

303 Ark. at 564, 798 S.W.2d at 426. She contends that the key phrase is "dominion over the deed" not "dominion over the property."

Appellant admits that when appellee learned of his infidelity in mid–2006, he told her he would do almost anything to salvage their relationship. He claims that her knowledge of the infidelity and awareness of his desperation placed her in a position of undue advantage over him. With full knowledge of the power she possessed, she then exercised improper influence over him by forcing him to either sign the quitclaim deed or face divorce. As such, he claims the deed is void, and the circuit court erred in awarding the property to appellee.

■ More generally, appellant notes that any deed executed under duress, between spouses or otherwise, is not a valid instrument. *Oberstein v. Oberstein,* 217 Ark. 80, 228 S.W.2d 615 (1950). To sustain a claim of duress, a party must prove that he was compelled, not merely persuaded, to do what he did. Here, he claims that appellee threatened him on numerous occasions, once even brandishing a gun at him . . . and then pointing it at herself. Conversely, no evidence was presented

that he had ever been violent, aggressive, or authoritative in their marriage. As such, he maintains that based upon the evidence, appellee was the dominant party in the relationship.

It is undisputed that appellee told appellant to sign the deed or she would divorce him. He urges that absent her use of undue influence, he would not have signed the deed. As a result, he contends that the circuit court should have shifted the burden to appellee to prove that the transfer of property was voluntary. *McCracken,* 2009 Ark. App. at 7, 358 S.W.3d at 479.

In *O'Quin v. O'Quin,* 217 Ark. 321, 230 S.W.2d 16 (1950), the supreme court found that the lower court's decision to uphold a quitclaim deed was reversible error, where the husband's actions inducing his wife to sign a deed to save their marriage amounted to fraud, overreaching, deception, and undue influence in the procurement. Appellant maintains that, based on *O'Quin,* a deed acquired via a promise to save a marriage, or avoid a divorce, is invalid and should be set aside. He urges that the facts in this case, like those in *McCracken, Younts,* and *O'Quin,* call for the deed he signed to be set aside, and the circuit court's failure to do so was clearly erroneous.

Appellee argues that in order to show domination in the context of marriage, one party must establish that the other party occupied such a superior position of dominance or advantage as would imply a dominating influence sufficient to amount to duress, coercion, or undue influence. *See Myrick v. Myrick,* 339 Ark. 1, 2 S.W.3d 60 (1999). Appellee points to evidence that appellant refused to allow her to handle the business affairs relating to the properties and the payment of the related bills to refute his claim. Appellee also argues that where it is claimed that a deed was ac-

quired by means of duress, the law requires that the proof be clear, cogent and convincing before the deed can be set aside. *See Millwee v. Wilburn,* 6 Ark.App. 280, 640 S.W.2d 813 (1982). Likewise, the presumption of a gift must be overcome by clear and convincing proof that no such gift was intended. *See Brown v. Brown,* 373 Ark. 333, 284 S.W.3d 17 (2008).

The circuit court reviewed the evidence and determined that a gift had been made from appellant to appellee. The court made no finding regarding the dominance of appellee over appellant. Instead, the court found that the transfer was valid, and we agree. Appellee's testimony at the hearing illustrated that appellant pled with her to stay married, and she agreed upon the condition that he execute the quitclaim deed. After execution, the parties remained married until appellant filed for divorce in 2009. Appellee presented evidence that the transfer was made freely, and the trial court is in a better position to determine whether such evidence was credible. We do not find that the trial court's validation of the deed was clearly erroneous.

### Award of Alimony

The award of alimony is not mandatory, but is instead discretionary, and the trial court's decision regarding any such award will not be reversed absent an abuse of discretion. *Jackson v. Jackson,* 2009 Ark. App. 238, at 5–6, 303 S.W.3d 460, 463–64. The purpose of alimony is to rectify, insofar as is reasonably possible, the frequent economic imbalance in the earning power and standard of living of the divorced parties in light of the particular facts of each case. *Id.* The primary factors to be considered in awarding alimony are the need of one spouse and the other spouse's ability to pay; secondary factors that may also be considered in setting alimony include (1) the financial circumstances of both parties, (2) the amount and nature of the income, (3) the extent and nature of the resources and assets of each of the parties and (4) the condition of health and medical needs of the parties. *Id.; see also Ellis v. Ellis,* 75 Ark.App. 173, 57 S.W.3d 220 (2001); *Holaway v. Holaway,* 70 Ark.App. 240, 16 S.W.3d 302 (2000). As this court explained in *Mitchell v. Mitchell,* 61 Ark.App. 88, 964 S.W.2d 411 (1998), neither this court, nor the supreme court, has ever attempted to reduce the amount of alimony to a mathematical formula. Presumably, it has been thought that the need for flexibility outweighs the corresponding need for relative certainty. *Id.* In setting the amount of alimony, the trial court may consider a range of acceptable alternatives. *Id.* Our supreme court and this court have emphasized in the past that the circuit court is in the best position to view the needs of the parties in connection with an alimony award. *See Taylor v. Taylor,* 369 Ark. 31, 250 S.W.3d 232 (2007).

Appellant argues that the trial court abused its discretion in awarding appellee rehabilitative alimony of $250 per month on the basis of her medical expenses, stating that the award does not serve the intended purpose of alimony. He cites *Matthews v. Matthews,* 2009 Ark. App. 400, 322 S.W.3d 15, for the proposition that the purpose of alimony is to rectify the economic imbalance in earning power and standard of living of the parties in light of the particular facts of each case, and urges that this purpose was not considered here.

In this case, we cannot say that the circuit court abused its discretion in determining the amount of alimony awarded to appellee. Our supreme court has stated that "[u]nless the alleged misconduct meaningfully relates to the need for support by the recipient ... the misconduct is

not a permissible consideration in the determination of the alimony award." *Russell v. Russell*, 275 Ark. 193, 205–06, 628 S.W.2d 315, 321 (1982). While appellant argues that the amount of alimony was predicated on fault because of appellant's indiscretions, the trial court's order indicated that it considered the proper factors, including the additional expenses of appellee's life-long medical expenses. The fact that those expenses are necessitated by appellant's giving appellee an STD does not make the award a fault-based decision. We find no abuse of discretion in the trial court's award of alimony.

### Division of Credit–Card Debt

A circuit court's decision to allocate debt to a particular party or in a particular manner is a question of fact and will not be reversed on appeal unless clearly erroneous. *Ellis v. Ellis*, 75 Ark.App. 173, 57 S.W.3d 220 (2001). The allocation of debt is an essential issue to be resolved in a divorce case, *id.*, and the overall distribution of property must be considered in that allocation. *See Boxley v. Boxley*, 77 Ark.App. 136, 73 S.W.3d 19 (2002).

Appellant contends that the trial court's inclusion of appellee's MBNA credit-card debt in the calculation and division of marital debt was clearly erroneous.

The court expressly acknowledged the factors that must be considered in dividing marital property, including debt. In dividing the credit-card debt in half, the trial court explained that it was balancing the facts that while appellant's income in the past had been greater, he presently lacked a job; appellee incurred a greater portion of the MBNA debt; the Sears credit card had been used to incur marital debt; and appellant incurred the two credit union debts for marital purposes. The court concluded that "an equal division of the debt seems appropriate." The statute vests the trial court with a measure of flexibility and broad powers in apportioning property, and the goal is a fair and equal distribution of all the property under the circumstances. *See Boxley*, 77 Ark. App. at 141–42, 73 S.W.3d at 23–24.

The credit-card statements were in the names of both appellant and appellee. The balance on the MBNA account in May 2009 was $43,838.54. Appellant testified that he knew about the credit card and believed that it had a balance of about $51,000. Appellee contended at the hearing that appellant called the credit-card company in 1997 to have his name added to the card. She stated that the card had been used for such items as food, clothing for the children for school, part of her college and masters degree debt, gas, and text books. Appellee testified that she had also used the card to charge living expenses when appellant was out of work in 2000 and 2003.

The trial court weighed all of the circumstances surrounding the division of the property and debts of the parties. Although appellant urges us to consider the MBNA credit-card debt separately, we cannot examine this one debt in a vacuum. Given all the facts in this case, we do not find that the trial court clearly erred in dividing the credit-card debt equally. Finding no error, we affirm on all points.

Affirmed.

GLADWIN and ROBBINS, JJ., agree.